PALLADI REALTY CO. *v.* OHLINGER ET AL.

[No. 121, October Term, 1947.]

304

*Decided April 1, 1948.*

*Rehearing Denied May 21, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hector J. Ciotti* and *Robert L. Slingluff*, with whom was *William H. Gorman, II*, on the brief, for the appellant.

*W. Albert Menchine* and *H. Harry Rosenberg* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is a bill for specific performance of a written contract for the sale of real estate, brought by the vendees against the vendor. The principal defense was that the contract had been rescinded. The Chancellor decreed performance, and an appeal was taken by the present title holder of the property in question, The Palladi Realty Company, a corporation, against whom the decree was entered. It was agreed in open court at the hearing below that the appellant would be bound by any decree passed in the case.

On October 25, 1945, Giuseppe Palladi, trading as Palladi Construction Company, was developing a subdivision in Baltimore County called West Hills, and was erecting houses thereon. By written contract of that date, he agreed to sell to appellees one of the lots in

this subdivision, known as 737 West Hills Parkway, subject to an annual ground rent of $96.00. This lot was to be improved by a two-story brick semi-detached dwelling. The price was $7390.00 of which $1490.00 was paid at the time of the execution of the contract, and the balance of $5900.00 was to be paid at the time of settlement when the house was ready for occupancy. The agreement contained the following clauses "* * * in the event of the cancellation of this Agreement by the Seller, the Purchaser (s) shall be entitled to reimbursement, without interest, of all monies paid on account hereof."

"This Agreement is conditioned upon the ability of the Seller to complete the above described property at present prices for material and on the existing scale of wages for labor, and the Seller is hereby given the option to cancel this agreement upon written notice to the Purchaser (s) if any such prices are increased prior to the date of settlement as herein provided."

Mr. Palladi testified that he was building 68 houses in the subdivision, that he bought material by contract for all the houses and not for a specified house, that it was delivered at various places, and he would use it on half a dozen houses, or perhaps a dozen. Prices of building material increased after October 25, 1945, some 15%, some 20% and some over 100%. He furnished a list of increases on various items between October 25, 1945, and October 10, 1946, the date of the notice of rescission hereinafter referred to, and stated that such building materials went into the house being built for the appellees.

During the summer of 1946, Mr. Ohlinger, one of the appellees, built a retaining wall in the rear of the property he had agreed to buy. This was constructed of stone on the property, and the cost to Mr. Ohlinger was, according to his testimony, four or five dollars for cement. He did the labor himself. Mr. Palladi knew he was building the wall, and consented to it. The wall was 3½ feet high, 1½ feet thick and about 8 feet in

length in one part and 2½ feet high and 7 feet long in another.

On October 10, 1946, before the house on the property was completed, Mr. Palladi attempted to take advantage of the cancellation option in the contract. His counsel wrote the appellees a letter, stating that by reason of the increase in the prices of certain materials necessary to complete the construction, he elected to cancel the agreement in accordance with the clauses already quoted. With this letter was enclosed a check of the Palladi Construction Company to the order of appellees for the amount of the deposit, $1490.00. This letter was received by the appellees on the same day. It was not answered, the check was not returned, but on November 7, 1946, appellees filed their bill of complaint in the Circuit Court for Baltimore County, asking specific performance of the contract of October 25, 1945, and asking for an order to allow them to bring into court the sum $1490.00 returned to them, to be entered to the credit of the cause they were filing and to be held pending the determination thereof. The same day the court signed such an order, the check was endorsed by both appellees and delivered to the Clerk of the Court, was deposited by the latter, and was ultimately paid by the bank on which it was drawn and charged to the Palladi Construction Company account.

The defenses to the bill of complaint are two-fold. First, the appellant claims that the cancellation of the contract was assented to by the appellees through their actions with respect to the check. Second, the appellant contends that the vendor, under the terms of the contract, had the right to cancel for the reasons and when he did. The appellees say that by reason of the permission given them to construct a wall on the property, Palladi was estopped from exercising any option he might have to cancel the contract, and that he waived his right to cancel by his delay in not notifying them when prices went up in the early part of 1946.

On the primary question whether the rescission of the contract was accepted by the appellees because of the endorsement and deposit of the check in the Circuit Court for Baltimore County in these proceedings, the Court is equally divided. Three members of the Court hold that the use made of the check constituted an acceptance of the conditions upon which it was tendered, even though this was contrary to the intention of the appellees. The other three are equally firm in their view that the deposit of the check in court in the case in which the appellees were attempting to enforce the contract was not a tortious exercise of dominion over the appellant's money. In view of this situation, the ruling of the chancellor on this point will be affirmed without discussion.

This does not, however, decide the case. The appellant's second contention, if valid, and if the vendor is now entitled to make it, will dispose of the case in appellant's favor, even though a divided court is unable to agree that the contract has been otherwise rescinded. We turn, therefore, to a discussion of the meaning of the cancellation clause in the contract and the actions of the vendor with respect to it.

The contract was made at a time when there was a limit or ceiling upon the price which could be charged for such a building as the house in question, and also at a time when there was a general expectation, soon realized, that the prices of materials to be used in such a house would increase. There was also a great demand for houses. Only under conditions such as these could it be supposed that the appellees would enter into a contract so obviously to their disadvantage. They parted with a not inconsiderable sum of money, had to wait for their house to be built, and faced a possible rescission of the contract without any compensation except the return of their deposit, and at the sellers' option. The cancellation clause was greatly to the advantage of the seller, but it is understandable that, under the circumstances related, he could not reasonably be expected to finance the construction of the dwellings he was selling without

protecting himself against rising prices which might entirely consume his profit. The contract must be construed in the light of this situation.

The option given to the seller could be exercised if the prices for material, existing at the time of the making of the contract, increased prior to the date of settlement. We think this must be reasonably interpreted to mean that when these prices increased to such a point that the seller felt unwilling to complete the house at the new cost and to sell it at the contract price, he could rescind.

The appellant offered in evidence a table of increases in prices of materials used in the house. The increases were considerable, but the table shows only the comparison between October 25, 1945 and October 10, 1946. The evidence of invoices and checks, however, indicates that many of these increases occurred in the spring and early summer of 1946. Some of the bills showing the new prices were paid in May, July and August. Most of those produced were paid in September. We can assume from these facts that Mr. Palladi knew, in the summer at least, that the house was going to cost more than it would have if constructed at the time the contract was made. If he thought it desirable, he could have then exercised his option. He did not have to cancel, however, and it may have been that he preferred to take a reduced profit, or even a loss, rather than hold the property until the ceiling was raised. But he permitted the appellees to expend their time and labor, (the money was inconsiderable) in building a wall on the lot, he never gave them the slightest intimation that he was going to cancel the contract, and he even told them, up until two or three days before October 10, 1946, that it would only be a matter of a few weeks before they could get in their house. Meanwhile they bought, for the house, furniture which was too large for the apartment in which they lived, and otherwise prepared to move in their new home which was nearing completion.

Appellant does not deny these facts, but claims that the right to cancel existed up until the time of final set-

tlement, and that Mr. Palladi had the right to exercise it when he did, even though he had known of the price increases for some time prior to his action. It was stated at the oral argument by counsel for the appellant that the ceiling price on such houses as the one on question had been raised or was about to be raised at the time of the attempted cancellation. It was argued that Mr. Palladi had the right under the contract to determine, at any time up until the settlement, whether he would sell at the contract price or not. According to the contention of the appellant, it might not have been possible for him to get more for the house until the ceiling was raised, and whether he sold to the appellees or to someone else, he could not get enough to recoup or minimize his losses. But when he thought the limit was to be taken off or raised, he then had a chance to get more money, he had a right to get it under the contract, and could then exercise his option of cancellation.

We do not think this is what the parties intended when the contract was made. While the appellees were willing to give Mr. Palladi the opportunity to save himself from a loss, we think a fair construction of their agreement is that he had to cancel, if at all, when he found that the cost of the house was so increased as to make this advisable. He found this out in the summer, but he obviously did not intend to cancel then. He led the appellees to think that they would get the house at the contract price, and permitted them to act under that impression. Whatever it was that finally induced him to attempt to exercise his option, it was not only the increased price of the materials which he knew about in the summer. We do not think the contract should be interpreted as appellant contends. The right to cancel arose when the condition occurred. When it was not then exercised it was waived. And when the appellees were inferentially informed by the acts and words of the seller that it was not to be exercised and they were permitted and encouraged to do what they did, the seller was estopped from taking advantage of his option, under any reason-

able construction of the contract. *Rody v. Doyle,* 181 Md. 195, 201, 29 A. 2d 290; *Price v. Adalman,* 183 Md. 320, at page 325, 37 A. 2d 877.

The decree will be affirmed.

*Decree affirmed with costs.*

HENDERSON, J., filed the following dissenting opinion:

I am unable to agree that the builder was required by the terms of the contract to exercise his option to rescind before the improvements were substantially completed, or that the vendor's consent to the erection of a small retaining wall was enough to raise an equitable estoppel under the circumstances. For these and other reasons I think the decree should be reversed.