## WASHINGTON HOMES, INC. *v.* LARRY E. BAGGETT ET AL.

[No. 78, September Term, 1974.]

*Decided October 18, 1974.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Paul M. Nussbaum* and *Richard E. Ekstrand,* with whom were *Reichelt, Nussbaum & Brown* on the brief, for appellant.

*T. Myron Loyd* and *Richard J. Clark* for appellees.

GILBERT, J., delivered the opinion of the Court.

Fifty-five individuals filed suit in the Circuit Court for Charles County against Washington Homes, Inc. (Washington) for specific performance of divers building contracts and for monetary damages for breach of the contracts. The claims of each of the fifty-five individuals alleged, in essence, that each of the plaintiffs had entered into a written contract for the construction of a house at a specified price, and each had obtained a mortgage commitment from a financial institution designated by Washington. The plaintiffs further averred that they

subsequently received a letter from Washington which read in pertinent part:

" . . . [T]he lending institution named by us [1] as being the lender designated to make you a first trust loan has informed us that due to present financial mortgage market conditions they will not consummate or make a loan to you.

Accordingly, pursuant to paragraph 15 of the Contract of Sale between you and the underwriters, Washington Homes, Inc. exercises its option to cancel and terminate said agreement."

Each letter was accompanied by a check payable to the order of the respective plaintiff in an amount equal to the deposit previously made by the plaintiff. Four of the plaintiff-appellees, Paul R. and Mary June Ehler and Thomas L. and Patricia A. Krouse, "cashed" their refund checks. None of the other plaintiffs, however, did so. The plaintiffs, after obtaining mortgage commitment from other lending institutions, demanded that Washington perform in accordance with the contract of sale. Washington declined to do so and this litigation ensued.

The basis of the claim for breach is that, as a result of what the plaintiffs perceive to be Washington's actions, the plaintiffs were required to incur "damages including but not limited to damages for the loss of the benefit of the contract, and the necessity of financing their homes at a higher interest rate." The Chancellor, as a result of a pretrial conference, ordered that the trial be bifurcated with the question of specific performance to be decided first, and the damage suits to be reserved for resolution at a later time. As of the date that this matter was heard on oral argument, the damage suits had not been litigated.

Following a trial, Judge James C. Mitchell decreed specific performance of the contracts in each of the cases. Washing-

1. Berens Associated of Washington, a subsidiary of Associated Mortgage Company, Inc. The record reveals Berens to be a Delaware corporation.

ton entered a timely appeal to this Court, pursuant to the provisions of Courts and Judicial Proceedings Article § 12-303 (c) (5). That section provides:

> "A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

> * * *

> (c) an order

> * * *

> (5) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court."

Of course, the right of appeal of the interlocutory orders set forth in Courts Art. § 12-303 is not affected by Md. Rule 605 a. *See Funger v. Mayor of Somerset*, 244 Md. 141, 223 A. 2d 168 (1966).

Washington posted a supersedeas bond, Md. Rule 1017, as to the Ehlers and the Krouses, and this stayed the execution of those specific performance decrees. No such bond, however, was posted as to the other plaintiff-appellees. Six of the successful plaintiffs, after the entry of a decree, abandoned their rights, and those cases have been voluntarily dismissed. We are left, therefore, with forty-nine appellees.

The appellees have filed a motion to dismiss Washington's appeal pursuant to Md. Rule 1035 b (7) on the ground that the specific performance litigation, with the exception of the cases of Ehler and Krouse, is moot. It is alleged in the motion, and candidly acknowledged on oral argument by Washington, that Washington had, in fact, complied with the decrees of the Circuit Court for Charles County in all cases except those of Ehler and Krouse. Washington stated in

its argument that it complied with the specific performance decrees because the cost of posting supersedeas bonds, in all of the cases, was prohibitive. Notwithstanding full compliance with the decrees, Washington asserts that the matters are not moot, and even though the houses have been built, settlements had and the properties conveyed by Washington to forty-five of the appellees, we should, nevertheless, reverse the decrees and order the properties restored to Washington.[2] It appears to us, as a result of what we were told on oral argument, that Washington seeks to have us decide, at least tangentially, the issue of damages still pending before the trial court. It is equally apparent that Washington seeks to have the best of both worlds.

Washington elected to comply with the court decrees rather than post supersedeas bonds. By their own actions they have mooted the issues. There is nothing remaining for this Court to decide as to forty-five of the appellees. This Court does not sit in order to decide abstract or moot questions of law. Md. Rule 1035 b (7). *See also Banner v. Home Sales Co.,* 201 Md. 425, 94 A. 2d 264 (1953): *Montgomery Co. v. Metropolitan Dis.,* 200 Md. 525, 92 A. 2d 350 (1952); *Davis v. State,* 183 Md. 385, 37 A. 2d 880 (1944).

Furthermore, we do not decide questions which have not been raised and decided by the trial court. Md. Rule 1085. Therefore, we shall refrain from commenting directly or indirectly upon the merits, if any, of the pending damage claims.

The motion of appellees to dismiss Washington's appeal, as to all appellees except the Ehlers and the Krouses, is granted.

We turn now to a discussion of the Ehler and Krouse cases. Washington contends that when they returned the deposits to Ehler and Krouse, and those persons accepted

---

**2.** Washington acknowledges that it should be required to pay back to the appellees the purchase price. Washington would then be at liberty to sell the houses to the appellees, or to other purchasers, presumably at today's inflated prices. Just what effect the doctrine of *lis pendens* would have as to the present mortgages is not made clear.

and negotiated the checks, Washington's obligation under the Ehler and Krouse contracts ceased.

The bill of complaint filed on behalf of the Ehlers states that after receiving notification on September 21, 1973 from Washington of the cancellation of the contract, the Ehlers obtained "prior to October 4, 1973 a loan commitment, and forwarded the commitment, as well as the deposit check . . . to . . . Washington. . . ." The record, however, does not support their allegations. With respect to the testimony of Mr. Ehler,[3] the record states:

"Q. Did there come a time that Washington Homes wrote you a letter and you say returned your check?

A. Yes, sir.

Q. Is that your check?

A. That is the check.

Q. And that is the check returning deposit to you?

A. That is the check.

Q. And you cashed it?

A. Yes, I did. It is in my savings account.

Q. So at the moment you have no deposit up at all with Washington Homes or anyone else for that matter?

A. No. According to them, I never did anyhow.

Q. Pardon?

A. According to Mr. Harnett, it probably never had one anyhow. The way it looks.

Q. But the contract in which you protected yourself, did call for a $500.00 deposit for you to put up with Washington Homes, correct?

A. That is right.

Q. And Washington Homes refunded that $500.00 deposit to you, did they not?

---

3. Mrs. Ehler did not testify.

A. They done it. I don't know if it was done legally, rightfully.

Q. But you took it?

A. Yes, sir."

Mr. Krouse [4] testified as follows:

"Q. You received from Washington Homes the deposit check of a thousand dollars?

A. Yes, sir.

Q. That was remitted to you with the letter from Washington Homes notifying you of the cancellation?

A. Yes, sir, it was. Yes, sir.

Q. And you kept that deposit check?

A. Yes, sir, I did.

Q. And you cashed it?

A. I put it in my savings account, yes, sir.

Q. So there is no consideration with Washington Homes at the moment?

MR. LOYD: Objection

BY MR. NUSSBAUM:

Q. Does Mr. — Does Washington Homes have any of your money?

A. Any of my money?

Q. Yes, sir.

A. Not to my knowledge, no, sir."

A prerequisite for specific performance is the existence of an enforceable contract. In *Tarses v. Miller Fruit & Produce Co.*, 155 Md. 448, 142 A. 522 (1928), the Court of Appeals stated that "[S]pecific performance will not be decreed of a contract which the parties [have] abandoned." 6 A. Corbin, *Contracts*, § 1140 (1962); 71 Am.Jur.2d *Specific Performance*, § 13 (1973). The issue here is whether the

---

4. Mrs. Krouse did not testify.

cashing of the deposit checks by Ehler and Krouse operated as an accord and satisfaction. If an accord and satisfaction is found, the parties' rights and obligations under the contract are discharged. If the contract was terminated, there can be no specific performance.

The Court of Appeals in *Mercantile T. & D. Co. v. Rode*, 137 Md. 362, 112 A. 574 (1921) quoted with approval 1 R.C.L. 195 where it is stated:

> "To constitute an accord and satisfaction in law
> ... it is necessary that the offer of money be made
> in full satisfaction of the demand or claim of the
> creditor, and be accompanied by such acts or
> declarations as amount to a condition that if the
> money is accepted, it is to be in full satisfaction and
> of such a character that the creditor is bound to
> understand the offer."

Professor Corbin, in his treatise on the law of contracts (Vol. 6, § 1277) puts it this way:

> " ... There must be accompanying expressions
> sufficient to make the creditor understand, or to
> make it unreasonable for him not to understand,
> that the performance is offered to him as full
> satisfaction of his claim and not otherwise."

In *Palladi Realty Co. v. Ohlinger*, 190 Md. 303, 58 A. 2d 125 (1948) the Court of Appeals considered a case involving facts similar to the case at bar. There Palladi, in a written contract with Ohlinger, agreed to sell to Ohlinger a property on West Hills Parkway in Baltimore County, Maryland, and to erect a house thereon. The contract reserved the right in Palladi to cancel the agreement if "present prices for material" and wages for labor "increased prior to the date of settlement." Palladi exercised the right because of increased costs. A letter was sent by Palladi to Ohlinger advising Ohlinger of the increase in the cost of building materials and the cancellation of the contract. The deposit money was returned to Ohlinger along with the letter. The letter was not answered by Ohlinger, and the check was not returned.

Slightly less than one month later, Ohlinger filed a Bill of Complaint and requested specific performance of the contract. The check was endorsed by Ohlinger and delivered to the clerk of the court who, in turn, deposited it. Ultimately, the check was paid by the bank upon which it was drawn and charged to Palladi's account.

Six judges of the Court of Appeals heard the case and were unable to agree. Three judges were of the opinion:

> " . . . [T]he use made of the check constituted an acceptance of the conditions upon which it was tendered, even though this was contrary to the intention of [Ohlinger]. The other three [were] equally firm in their view that the deposit of the check *in court* in the case in which [Ohlinger was] attempting to enforce the contract was not a tortious exercise of dominion over [Palladi's] money." (Emphasis supplied).

None of the judges said that the acceptance of the check did not constitute an accord and satisfaction. The division of opinion in the *Palladi* case was centered around the manner in which the check was cashed. We glean from the above quoted language that had the check been cashed other than by the method employed, *i.e.,* by endorsing it over to the clerk of the court, that the decision of the Court of Appeals would have been to the effect that the contract was terminated. It is only the peculiar manner in which Ohlinger negotiated the check, representing a deposit of the refund, that caused the division.

In the case now before us there was no endorsement of the check to the clerk of the court; rather the checks were deposited into the respective accounts of Ehler and Krouse. Both *Mercantile Trust v. Rode, supra,* and *Palladi Realty Co. v. Ohlinger, supra,* are in accord with 6 A. Corbin, *Contracts,* § 1279 (1962) wherein it is said:

> "The cashing, or the certification, of a check expressly sent in full settlement of a disputed claim, operates as an accord and satisfaction if, at

the time, no word of dissent is sent to the party offering it in satisfaction."

*See also* 15 S. Williston, *Contracts,* § 1854 (3d ed. 1972) which states,

"As a matter of law, the use or retention of the check by the creditor, with knowledge of the condition, is regarded as an assent to it."

It is indubitable that Washington sent letters of cancellation to the Ehlers and the Krouses in which it is explicit that Washington considered the contracts to be terminated. The letters were accompanied by checks expressly stated to be a refund of the deposit monies. In our view, when the Ehlers and the Krouses, who did not communicate immediately their dissatisfaction with the cancellation and refund, cashed the checks, they accepted the cancellation, and the contractual relationship between them and Washington was at an end. The contracts ceased to exist, and inasmuch as there were no contracts, there could be no breach and no consequent remedy of specific performance. The Chancellor erred in ordering specific performance, by Washington, as to the Ehlers and Krouses. We, therefore, reverse those two decrees.

> *All appeals except as to the Ehlers and the Krouses, dismissed.*
>
> *Decree ordering specific performance as to the Ehlers, reversed.*
>
> *Decree ordering specific performance as to the Krouses, reversed.*
>
> *Costs to be paid by Washington Homes, Inc.*