## TEAMSTERS LOCAL 639-EMPLOYERS HEALTH TRUST
### v. RELIABLE DELIVERY SERVICE, INC.

[No. 1062, September Term, 1978.]

*Decided May 10, 1979.*

The cause was argued before GILBERT, C. J., and MOORE and LISS, JJ.

*W. Shepherdson Abell* and *Charles R. Both,* with whom were *Fury, Doolan & Abell* and *Yablonski, Both & Edelman* on the brief, for appellant.

*Phillip H. Harris,* with whom were *Edward R. Levin* and *Danzansky, Dickey, Tydings, Quint & Gordon* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This appeal generally involves the interpretation of a collective bargaining agreement between the appellant, Teamsters Local 639-Employers Health Trust (Trust), and Reliable Delivery Service, Inc. (Reliable). Specifically, it is concerned with the meaning of the noun "employee" as used in the agreement. Reliable and the Circuit Court for Prince George's County assert that *employee* was a synonym for *union member*. That conclusion not only rejected the Trust's argument that the two terms were not the same, but also disallowed Trust's claim for $8,630.83.

Trust raises three issues for our review which we combine and reword as follows:

Did the trial court err in its interpretation of the noun "employee" as used in the collective bargaining agreement between Trust and Reliable?

The facts of the matter are uncontested. The collective bargaining agreement entered into on March 12, 1973, provided:

"Article XIII
HEALTH AND WELFARE
(a) The employer shall contribute to the appropriate Health and Welfare Funds in accordance with the following: The Employer party to this Agreement with Chauffeurs and Helpers Local Union 639, Washington, D.C., shall make payment effective February 1, 1973, of Twenty-two Cents ($.22) per hour on each hour worked for each employee. Effective August 1, 1975, such payments will be Twenty-Five Cents ($.25) per hour."

Article I of the agreement sets out what is meant by "employee." Section 1(b), thereof, states that:

"Employees covered by this Agreement shall be construed to mean, but not limited to, any driver, chauffeur, or driver-helper operating a truck, tractor, motorcycle, passenger or hose-drawn [*sic*]

vehicle, or any other vehicle operated on the highway or street or private road for transportation purposes when used to defeat the purposes of this Agreement. The term 'employee' also includes, but is not limited to, all employees used in dock loading, shipping, handling, receiving, assembling and allied work."

For reasons not apparent from the record, Reliable did not make the hourly payments with respect to some of the employees. An audit conducted by John R. Foley, Esquire, disclosed, according to Mr. Foley, that Reliable owed Trust $11,967.34 for 1973 and $4,444.22 for 1974. The Foley determination amounted to $16,411.56. The Foley figure was arrived at by auditing Reliable's payments and including all persons employed in the jobs enumerated in Article I § 1(b), irrespective of the length of their employment. Reliable, in replying to Foley's demand for the payment of $16,411.56, said in a letter signed by Richard M. Barnett, Vice President:

"I am enclosing, herewith, a check for Seven Thousand Seven Hundred Eighty Dollars and Seventy Three Cents, which according to our calculations is the amount owed the Teamsters Local 639 Employees Health Trust fund. This figure is arrived at through exact interpretation of Union Contract — Article I Section 4 and Article 13 Section A [sic].

Should you have any questions, please contact our attorney. . . ."

The check contained no qualifying language or comments. Trust deposited the $7,780.73 and a few months later brought an action in assumpsit for $16,411.56. That sum was amended by the trial judge to read $8,630.83, the difference between the amount claimed by Trust and that paid by Reliable.

Reliable has interwoven into its brief, issues of limitations and accord and satisfaction. Those two defenses are in addition to the assertion that the word *employee,* as used in the agreement, means *union member.* Our view of the matter is that the defense of limitations is not properly before us because, while it was raised in the trial court, the judge did

not rule upon it. Md. Rule 1085. Inasmuch as this case shall be reversed and remanded, the appellee will have an opportunity of presenting the matter of limitations, *vel non,* to the judge for a ruling.

The trial judge concluded that the defense of accord and satisfaction did not lie. We agree. We had the opportunity, in *Washington Homes Inc. v. Baggett,* 23 Md. App. 167, 326 A. 2d 206 (1974),[1] to revisit *Mercantile T & D Co. v. Rode,* 137 Md. 362, 112 A. 574 (1921), wherein the Court of Appeals had quoted with approval 1 R.C.L. 195 that:

> "To constitute an accord and satisfaction in law . . . it is necessary that the offer of money be made in full satisfaction of the demand or claim of the creditor, and be accompanied by such acts or declarations as amount to a condition that if the money is accepted, it is to be in full satisfaction and of such a character that the creditor is bound to understand the offer."

*See also* 6 Corbin, *Contracts* § 1277 (1962); 15 S. Williston, *Contracts* § 1854 (3d ed. 1972); *Palladi Realty Co. v. Ohlinger,* 190 Md. 303, 58 A. 2d 125 (1948).

The letter, quoted textually above, from Reliable's vice-president to the Trust's counsel does contain an offer of money, but the offer is unaccompanied by any express or implied indication that it is tendered in full satisfaction of Reliable's indebtedness to Trust. Consequently, it does not pass muster under *Mercantile, supra* or *Washington Homes, supra.* There was no accord and satisfaction.

As we have earlier herein stated, the disposition of this appeal is grounded wholly in an interpretation of the noun "employee," as used in the bargaining agreement.

Basic to an interpretation of a contract is the principle that courts search for the intent of the parties at the time of the making of the agreement. *Kasten Construction Co. v. Rod Enterprises, Inc.,* 268 Md. 318, 301 A. 2d 12 (1973); *Cadem v. Nanna,* 243 Md. 536, 221 A. 2d 703 (1966). That intent is

---

1. *Cert. denied,* 273 Md. 723 (1975).

gleaned from the contract itself, when read and considered in its entirety rather than from any single clause, phrase or section. *Laurel Race Course, Inc. v. Regal Construction Co.,* 274 Md. 142, 333 A. 2d 319 (1975); *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 302 A. 2d 37 (1973); *Kasten Construction Co. v. Rod Enterprises, Inc., supra.*

Judge Smith, in *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A. 2d 626 (1977), put the matter of contractual construction in capsule form when he said:

> "We see this as a case of contract construction, the principles of which are well known and have been enunciated by this Court numerous times: the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or intended it to mean; where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed; and when the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Billmyre v. Sacred Heart Hosp.,* 273 Md. 638, 642, 331 A. 2d 313 (1975), and cases there cited."

The trial judge explained that he believed from a "viewing of the entire . . . agreement . . . that 'employee' meant a union member." We have an entirely different view.

The agreement divides employees of Reliable into two groups — 1) temporary employees, which consist of all employees who have not completed a sixty-day probationary period, and 2) regular employees. All employees must become union members on the thirty-first day following their employment. Upon completion of the sixty-day probationary period, a temporary employee automatically becomes a regular employee, entitled to certain benefits under the collective bargaining agreement. Patently, such benefits are not available to union members who have not completed their probationary period. This distinction makes manifest, we

think, that the term *employee* is not a synonym for *union member.*

That the distinction exists is buttressed by other provisions of the contract. Article X, § 1 provides that "[a]ll employees covered by this agreement shall be paid for all time spent in Service of the Employer." Article XVI, § 2 requires that each "employee" " 'punch in' his own time card." Appellee's reasonings would have us reach an incongruous result that only union members are to be paid for all time spent serving Reliable, or that only union members are required to " 'punch in' . . . [their] own time cards." We think that the use of the word "employee" in the contract means exactly that — an employee, *i.e., any* employee.

We are also supported in our view by the fact that the Health and Welfare Trust Agreement provided in Article III thereof as follows:

"1. In order to receive the benefits provided hereunder an employee must be an "eligible employee" defined as follows:

(a) He must be an employee covered by a collective bargaining agreement between the COMPANY signing this Agreement and the UNION, or a casual employee regularly employed in the trucking industry as defined and limited by the Board of Trustees and reported by and through Local Union 639, or an officer or employee of Local Union 639 or of any other Union admitted as an employer to participation in this Trust.

(b) If he is on the payroll of such COMPANY, as specified above, during the work prior to the first date benefits shall be available through the TRUST, he shall be tentatively listed as eligible for benefits if he has been employed by such COMPANY for a period of six months and if he has worked 720 hours in such period.

(c) An employee of the COMPANY, as specified above, who is not tentatively listed as eligible for benefits under the provisions of sub-paragraph (b)

of Article III, shall thereafter be tentatively listed as eligible for benefits on the first date thereafter occurring when he shall have been employed by such COMPANY for a period of six months and if he has worked 720 hours in such period.

(d) An employee having qualified for benefits under Sections 1 (a), (b), or (c) of this Article shall receive such benefits for himself, his dependents, or his heirs or beneficiaries, as the case may be, if he is employed by any Company having signed this or a related agreement with the Trust or has been terminated from employment by any such COMPANY for no more than thirty (30) days on the date on which the basis for the claim for benefits occurs; PROVIDED, however, that the employee has been reported to the Trust by any such Company as actively employed each month preceding such claim date; PROVIDED, FURTHER, that, on such claim date, the last employing Company shall not have been suspended from the Trust as provided hereinafter.

The trial judge opined that "a reasonable person would not intend that ... [Reliable] contribute to a union trust for a non-union member employee." That reasoning overlooks the language of the Trust, which is not, as we have seen, limited to union members. Thus, a basic premise upon which the trial court built its construction is faulty and will not stand.

As we see it, the collective bargaining agreement left no room for judicial contractual construction. There was no ambiguity, and, hence, there was no need to endeavor to look behind the plain meaning of the verbiage of the contract.

*Judgment reversed and case remanded to the circuit court for further proceedings.*
*Costs to be paid by appellee.*