Shirley G. PARKER, Individually, and to the use of Syreeta Parker, a minor, Plaintiff–Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellee.

Shirley G. PARKER, Individually, and to the use of Syreeta Parker, a minor, Plaintiff–Appellee,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellant.

Nos. 89–3263, 89–3271.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1990.

Decided April 10, 1990.

Rehearing Denied May 16, 1990.

John F.X. Costello, McCarthy, Bacon, Costello & Stephens, Landover, Md., for plaintiff-appellant, cross-appellee.

Thomas Moss Wood, IV, Frank, Bernstein, Conaway & Goldman, (Peter F. Axelrad, Brian L. Wallace, Frank, Bernstein, Conaway & Goldman, on brief), Baltimore, Md., for defendant-appellee, cross-appellant.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.

PER CURIAM:

Shirley Parker appeals the grant of a directed verdict for the defendant Prudential Insurance Company on her claim for the benefits of a life insurance policy purchased by her deceased husband. Pruden-

tial cross appeals the denial of its alternative motion for a directed verdict. We hold that the district court should not have directed a verdict on the issue of accord and satisfaction but that Prudential was entitled to a directed verdict on the grounds of misrepresentation because the application failed to disclose a history of smoking and drug use.

## I

On December 30, 1985, Michael Parker purchased a $100,000 life insurance policy from Prudential. A Prudential agent read him the background question; he responded verbally; and the agent wrote the responses on the form. After answering the questions, Parker read and signed the application form. He was killed in a head-on automobile accident approximately four months later. His widow filed a claim as the primary beneficiary under the life insurance policy.

Prudential instituted an investigation and discovered through medical records that Parker had been a smoker and had used cocaine and heroin.[1] On the policy application form, two relevant questions were answered as follows:

24: Has the Proposed Insured or spouse ever smoked?

Answer: No.

27(c): Has any person to be covered ever used or is any such person now using barbiturates or amphetamines, marijuana or other hallucinatory drugs, or heroin, opiates or other narcotics, except as prescribed by a doctor?

Answer: No.

Prudential decided that the above responses constituted material misrepresentation in light of Parker's medical records and that, as a result, the company would not pay the claim. In the letter informing plaintiff of its position, Prudential indicated that its only liability was to refund the premium paid, plus interest ($76.90), and it offered to send a check for that amount.

Plaintiff retained an attorney, William Thornton, who engaged in some discussions with Prudential and then requested a check for the premium refund. Mrs. Parker deposited the check shortly after receiving it. Neither the letter from Prudential nor the check contained any language indicating that the check was sent in full satisfaction of all claims. After consulting a new attorney, plaintiff sent her check to Prudential to return the premium refund and indicated that she was still pursuing collection of the policy benefits. Prudential has retained that check without negotiating it.

Plaintiff filed this action in Maryland state court to collect the $100,000 policy benefit. The defendant removed the case to federal court based on diversity of citizenship. The case went to trial, and, at the conclusion of the plaintiff's case, Prudential moved for a directed verdict on the alternative grounds of accord and satisfaction and rescission of the contract for material misrepresentation. Prudential claimed that acceptance of the premium refund check constituted an accord and satisfaction. Mrs. Parker, however, testified that she believed she could continue to pursue her claim against Prudential after depositing the check. Her former attorney testified as to his actions, but assertion of the attorney-client privilege prevented any testimony about the substance of his advice to her concerning the acceptance of the premium refund check.

The trial judge held that Prudential had shown accord and satisfaction as a matter of law and granted a directed verdict but rejected misrepresentation as a basis for his decision. Plaintiff now appeals the grant of a directed verdict, and Prudential cross-appeals the denial of its alternative motion for a directed verdict for misrepresentation. The parties present four issues:

(1) did the trial court use the proper standard in assessing the motion for a directed verdict;

---

1. The parties agree that the automobile accident was not related to any smoking or drug use by

Mr. Parker.

(2) did the trial court err in allowing the plaintiff's former attorney to testify;

(3) did the trial court properly grant a directed verdict for accord and satisfaction; and

(4) did the trial court properly deny the defendant's motion for a directed verdict for misrepresentation?

## II

Before examining the merits of the motions for a directed verdict we consider two other issues raised by the parties.

### A. Attorney–Client Privilege

 Prior to trial Mrs. Parker filed a motion in limine to preclude the testimony of her former attorney, William Thornton, based on the attorney-client privilege. The defendant argued that she had waived the privilege by answering questions during a prior deposition. The court held that she had not waived the privilege and granted the motion to prevent the defendant from asking Thornton questions about the substance of the legal advice he gave her. The court did allow testimony from Thornton concerning his actions.

During trial Prudential elicited testimony from Thornton to establish that (1) he represented the plaintiff, (2) he attempted to collect the benefits of the policy, (3) he had discussed with her the issue of accepting the check, and (4) she directed him to obtain the premium refund check after those discussions. He was not allowed to testify directly about the substance of any advice he gave her.

Plaintiff now argues that the court used this testimony to infer that he must have told her that accepting the check would constitute accord and satisfaction. This alleged inference, she argues, constitutes an impermissible intrusion on the attorney-client privilege. In addition, she argues that the inference is not warranted by his testimony.

We agree that the trial court impermissibly used testimony from Thornton to draw an inference about the substance of her conversations with him. The trial judge relied upon that testimony in his ruling, emphasizing that "there was an attorney who advised this lady to take the check and cash it" when he directed a verdict for accord and satisfaction.

Thornton's testimony relates to Mrs. Parker's state of mind when she deposited the check from Prudential. However, the testimony is only probative if one infers that the attorney told her acceptance of the check either would or would not waive further claims for the policy benefits.[2] Any such inference would intrude upon the protected realm of the attorney-client privilege. The privilege was created to protect the right to effective counsel. "[A]n individual in a free society should be encouraged to consult with his attorney whose function is to counsel and advise him and he should be free from apprehension of compelled disclosures by his legal advisor." *State v. Pratt,* 284 Md. 516, 398 A.2d 421, 423 (1979); *Helferstay v. Creamer,* 58 Md. App. 263, 473 A.2d 47 (1984). To protect that interest, a client asserting the privilege should not face a negative inference about the substance of the information sought.

Prudential complained that her invocation of the privilege made it difficult to prove whether she knew the legal effect of accepting the premium refund check. However, Prudential misstates the issue. The legal effect of depositing the check depends on the terms of the agreement, if

---

**2.** The testimony is only helpful to Prudential if one infers that Thornton told his client that acceptance would waive her claim for the policy benefits. However, neither the letter from Prudential nor the check contained explicit language of release of further claims. Without such language, acceptance of the check does not necessarily constitute an accord and satisfaction, and Thornton could have told her she could continue to press her claim for the policy benefits. *Cf. Teamsters Local, Etc. v. Reliable Delivery,* 42 Md.App. 485, 401 A.2d 191 (1979) (finding no accord and satisfaction where partial payment was not accompanied by a condition that acceptance constituted full satisfaction of the claim). Her assertion of the attorney-client privilege is not a basis for inferring otherwise. 8 *Wigmore on Evidence* § 2322 (McNaughton rev. 1961).

any, between the parties. Prudential bears the burden of proving that agreement. Plaintiff had no duty to disclose the contents of her conversations with her attorney or to produce any other evidence on the issue. Any difficulties in proof faced by Prudential stem from its failure to obtain a clear agreement, not from plaintiff's invocation of the attorney-client privilege.[3]

### B. *Standard for Assessing a Motion for a Directed Verdict*

In considering a motion for a directed verdict, the court must construe the evidence in the light most favorable to the party against whom the motion is made. *Garraghty v. Jordan*, 830 F.2d 1295, 1302 (4th Cir.1987). Plaintiff argues that the district court incorrectly construed all evidence in favor of Prudential rather than in her favor. During the oral argument on the defendant's motion for a directed verdict, the court stated that it must "look at [the evidence] in the light most favorable to the *Defendant....*" (Emphasis added.) The court also indicated that the plaintiff bore the burden of proving the affirmative defense of accord and satisfaction.

While both of these statements are incorrect, a reading of the entire transcript of the hearing suggests that the district judge either misspoke or was temporarily confused. When making his ruling, the judge clearly stated that "even if I look at [the evidence] in a light most favorable to [the plaintiff]," the evidence was insufficient to reach the jury. The judge did not clarify in his ruling which party bore the burden of proving accord and satisfaction but appears to have considered that the evidence in favor of the defendant was so overwhelming that the placement of the burden did not matter.

Even if the district court erred, however, the issue is not crucial on appeal. A mo-

tion for a directed verdict raises a question of law, so this court reviews the decision de novo. *Miller v. Premier Corp.*, 608 F.2d 973, 981 (4th Cir.1979); 9 Wright & Miller, *Federal Practice and Procedure* § 2536 (1971). Thus, we turn to our own examination of the merits of the two motions for a directed verdict.

### C. *Accord and Satisfaction*

Plaintiff argues that the record does not support a directed verdict for the defendant on the issue of accord and satisfaction. The court should not allow a jury to consider a case if "without weighing the evidence or considering the credibility of witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.'" *Gairola v. Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir.1985).

Accord and satisfaction is an affirmative defense in which the defendant must prove three elements:

1. a bona fide dispute has arisen between the parties as to the existence or extent of liability,

2. subsequent to the arising of that dispute, the parties entered into an agreement under the terms of which the dispute is compromised by the payment by one party of a sum in excess of that which he admits he owes and the receipt by the other party of a sum less in amount than he claims is due him, all for the purpose of settling a dispute, and

3. a performance by the parties of that agreement.

*Rust Engineering Co. v. Lawrence Pumps, Inc.*, 401 F.Supp. 328, 333 (D.Mass. 1975).[4] Plaintiff concedes the first and third elements but contends that a material issue of fact exists as to whether the par-

---

**3.** Had Mrs. Parker claimed that she reasonably relied upon the advice of her attorney that accepting the check would not waive future claims, then she may have waived the attorney-client privilege. *Cf. S.E.C. v. Forma*, 117 F.R.D. 516 (S.D.N.Y.1987) ("a defendant cannot claim that the assurances of counsel protect him from liability and at the same time preclude discovery of attorney-client communications relat-

ed to that advice"). However, it was Prudential, not Mrs. Parker, who attempted to insert the advice of her counsel into the proceedings.

**4.** Maryland has adopted a similar formulation. *See Air Power, Inc. v. Omega Equip. Corp.*, 54 Md.App. 534, 459 A.2d 1120 (1983).

ties agreed to a compromise to settle the dispute. Because it is an affirmative defense, the burden of proving an agreement rests with the defendant.

■ Prudential offers evidence of an agreement consisting primarily of acceptance of a check for $76.90 and the prior letter to plaintiff indicating that the company recognized a responsibility only to refund all premiums paid plus interest.[5] While the letter did not expressly condition payment on a waiver of all claims to the policy benefits, Prudential claims that under the circumstances plaintiff knew or should have known that it intended the check to settle all claims.

Plaintiff argues that the jury could reasonably credit her testimony that she believed her acceptance of the premium refund check would not compromise her claim for the policy benefits. For support she cites *Teamsters Local, Etc. v. Reliable Delivery*, 42 Md.App. 485, 401 A.2d 191 (1979), in which the union claimed the employer had failed to make payments due under the collective bargaining agreement. The employer sent a check for less than the amount claimed with a letter indicating that the enclosed amount was the total owed to the union. The union cashed the check and then sued for the balance of its claim. The court found no accord and satisfaction because the offer of money was not accompanied by a limitation that it constituted full satisfaction of all claims.

We agree that a reasonable jury could find that Prudential failed to prove the existence of an agreement to compromise the claim. As in the *Teamsters* case, the letter from Prudential offering to refund the premiums stated that such a refund was the only liability conceded by Prudential, but it did not condition payment of the refund on a waiver of her claim to the policy benefits. While the jury may consider the surrounding circumstances, acceptance of the check was not inconsistent with an intention to pursue a claim against Prudential. Prudential has admitted from the beginning that, at minimum, it would have to refund the insurance premiums, regardless of what was said on the insurance application form. *See Stumpf v. State Farm Mut. Auto. Ins. Co.*, 252 Md. 696, 251 A.2d 362 (1968). The dispute was not whether Prudential owed anything but whether it owed *more than* $76.90. Mrs. Parker could have reasonably accepted the amount conceded by Prudential and then pursued the disputed amount in court.

## D. *Misrepresentation*

Prudential cross-appeals the district court's denial of its second motion for a directed verdict on the ground of material misrepresentation. Prudential contends that Mr. Parker failed to disclose his history as a smoker and drug user on his life insurance application form and that these misrepresentations justify rescission of the policy. In assessing this claim, a jury would first have to determine whether a misrepresentation had been made. If so, the jury would then decide whether that misrepresentation was material. *Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527 (D.Md.1979). In considering Prudential's motion for a directed verdict, we consider whether a jury could reasonably find for plaintiff based on the evidence in the record.

### 1. *Misrepresentation*

■ Mr. Parker's medical records indicate that as of January 1985 he was smoking one package of cigarettes per day. They also indicate that he had used heroin and cocaine three years before that date. In addition, plaintiff admitted that her husband was smoking one half a pack of cigarettes per day when he applied for the life insurance policy. Her challenge, however, is based upon an alleged ambiguity in the application form arguing that if an application is ambiguous it must be construed in favor of the policyholder. *Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527, 535 (D.Md.1979). As a result, failure to

---

**5.** We consider Thornton's testimony only to show that Mrs. Parker authorized him to request the check from Prudential and that he forwarded the check to her after receiving it from Prudential.

disclose information is grounds for rescission only if the application form was "reasonably designed to elicit from the applicant the information which was material to the risk." *People's Life Ins. Co. v. Jerrell*, 271 Md. 536, 318 A.2d 519 (1974).

The application form asked if any "person to be covered" had ever used drugs. Plaintiff contends that "person to be covered" could have meant either the insured or plaintiff as his "covered" beneficiary. We cannot agree that this question was ambiguous. If nothing else, the context makes clear that it is the health of the person whose death triggers the benefits that is the important question for the insurance company, not the health of his beneficiary.[6]

Even if we were to find that question 27(c) was ambiguous, plaintiff fails to challenge the question concerning smoking. Question 24 was reasonably designed to elicit information about the applicant's smoking history, and the negative response was clearly a misrepresentation.[7]

## 2. *Materiality*

■ Under Maryland law, an insurer may deny recovery for a misrepresentation, *inter alia*, if the "insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate...." Md.Ann.Code, Art. 48A § 374 (1957).

Prudential argues that had it known of Parker's smoking and history of drug use, it probably would not have issued the policy, and, if it had, it would have required a substantially higher premium. Plaintiff responds by pointing out that two claims agents for Prudential recommended paying the claim, suggesting that the prior smoking and drug use may not have been material.

While a triable issue may exist as to whether Prudential would have issued the policy, it is uncontradicted that the policy premium would have been substantially higher. It was testified that the Prudential representative completed the policy application listing the applicant as a nonsmoker to get a smaller premium. This admission alone warrants summary judgment for misrepresentation.[8] In addition, while evidence only exists of drug use four years before the application, the Prudential guidelines treat past cocaine and heroin use extremely seriously.

The internal recommendations of two Prudential claims agents concerning payment of the claim cannot prove that the misrepresentation was immaterial at the time the policy was issued. A decision to pay a claim rather than engage in expensive litigation is not tantamount to a decision that the policy would have been issued at the same premium rate. In addition, the two agents, neither of whom had authority to decide a claim for as large as $100,000, eventually concurred in the decision to deny the claim.

> It is immaterial that it is the agent who inserts false statements about material matters in an application for insurance, because if the assured has the means to ascertain that the application contains false statements, he is charged with the misrepresentations just as if he had actual knowledge of them and was a participant therein.
> *Serdenes v. Aetna Life Ins. Co.*, 21 Md.App. 453, 461, 319 A.2d 858 (1974).

**6.** Mrs. Parker relies on *Jerrell*, 271 Md. 536, 318 A.2d 519, for support. In *Jerrell*, the insured's mother filled out the application on behalf of her son. One question asked whether "you" know of any impairment in "your" health or physical condition. The court held that the mother could have reasonably believed the question referred to her health and that such a vague question was not "reasonably designed" to elicit information about prior drug abuse. The questions at issue in this case, however, were clear and specific.

**7.** Mrs. Parker testified that her husband told the insurance agent about his smoking and that the agent decided to insert a negative response to get a lower premium. Even if true, the law in Maryland still requires a directed verdict for the defendant.

**8.** *See Mutual Benefit Life Ins. Co. v. JMR Electronics Corp.*, 848 F.2d 30 (2d Cir.1988) (affirming summary judgment for defendant where insured had incorrectly stated on life insurance application that he did not smoke).

## III

The evidence in the record does not show accord and satisfaction as a matter of law. However, the uncontradicted evidence does show a material misrepresentation sufficient to warrant rescission of the contract by Prudential. The insured obtained a lower premium through misrepresentation about his smoking, and, under Maryland law, that showing alone is sufficient to direct a verdict for Prudential. Thus, the lower court erred in denying the defendant's motion for a directed verdict for misrepresentation. We therefore affirm the grant of a directed verdict but for reasons different from those relied upon by the district court.

AFFIRMED.