EUGENE STRATEMEYER, Plaintiff-Appellee, *v.* LARRY WEST, Defendant-Appellant.

Fifth District   No. 5—83—0639

Opinion filed June 14, 1984.

William F. Meehan, P.C., of Cairo, for appellant.

Law Offices of Guy M. Lahr III and Associates, of Metropolis, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Eugene Stratemeyer, brought this action for breach of contract against defendant, Larry West, to recover the amount allegedly owed on a contract to construct grain bins and related grain storage equipment on two farms owned by A & L Farms, a partnership of which West and Alan Falconer were sole members. The circuit court of Johnson County, sitting without a jury, entered judgment in favor of plaintiff for all sums due on the contract, interest and costs.

A & L Farms, dissolved in December 1980, was a partnership that dealt in the purchase and resale of farms in southern Illinois. West testified that he and Falconer entered into their business in 1978 or 1979. The farms were purchased together, owned jointly as partnership property, "cleaned up," farmed for a time, then resold for an even-split profit between the partners. West described himself as "landowner" and Falconer as the tenant farmer and "general manager" of the various farms purchased. West testified that Falconer managed the day-to-day activity of the farms but had no authority to incur "major expenses." West described the operation as "[p]retty much how a farm is run, you plant the seed and harvest it and sell it ***."

In August 1980, plaintiff and Falconer consummated the contract whereby plaintiff would supply materials and labor for grain bins on the Kayser Farms and the Prater Farm, both of which were owned by the partnership at that time. The contract was signed by Alan Falconer. Stratemeyer testified that he dealt exclusively with Falconer in this instance and did not talk to West about these grain bins until after they were erected. Stratemeyer testified that it was his assumption at the time that Falconer was contracting for A & L Farms: "I had sold these people a bin before, I had no reason to believe that it was any other way. *** Falconer had made the deal before and I got my money." Further, Stratemeyer testified that he had no knowledge in August of Falconer's alleged want of authority nor any knowledge of the eventual partnership dissolution.

Falconer testified that he contacted Stratemeyer to supply and build the bins on the Kayser and Prater Farms as an incident of the partnership business. He stated that he spoke with West about the bins on several occasions before making arrangements with Stratemeyer. Falconer testified that he and West had made a decision that additional storage was needed, so they priced out grain bins and ob-

tained quotes or estimates from other providers. "[W]e were going to take the best deal that was offered for the quality of structure and for the type and [sic] would meet the operation." Falconer added, "Mr. Stratemeyer had the best deal so Mr. Stratemeyer was the one that got the contract." Falconer further testified that West did not specifically instruct him not to place the bins on the properties and that West did nothing to indicate that Falconer had no authority to do so. In fact, Falconer testified that West knew that the bins were ordered and were to be put on the properties. Finally, Falconer testified that the agreement with Stratemeyer was made before negotiations for dissolution of the partnership commenced.

West testified that he had no reason to obtain the bins since in August he was in the process of dissolving the partnership. He denied ever talking to Falconer about building the bins. He testified that the first time he saw or heard about the bins was after they were erected. He stated that he considered the partnership dissolved in April 1980, but it was not formally dissolved until December 1980. West further testified that the partnership previously owned the farms in question but that he had acquired ownership following Falconer's bankruptcy, which occurred after the bins had been built.

■ First, defendant contends that plaintiff's complaint failed to allege a necessary element of his cause of action: performance of the contract pleaded. We do not agree. Count II of plaintiff's second amended complaint recites the following:

"3. On or about August 1, 1980, at the special instance and request of defendant, or defendant's agent, plaintiff performed labor, to wit: Installation of grain bins and equipment incidental thereto and delivered materials, to wit: Bins, metal, motors, wiring, sand, fill, concrete, on and at said premises; an account of which labor and materials is attached ***."

This averment specifically states that plaintiff performed labor, delivery and installation according to the account attached to the complaint. Defendant answered the allegation with a general denial but not until the close of plaintiff's case did he move for judgment on the pleadings. Even then, he asserted only generally that there was no allegation of performance of conditions precedent. Nor in his post-trial motion did he point out specifically the defects complained of. For the first time, on appeal, he argues specifically that the complaint fails to allege compliance with the contractual term requiring "[a]ll work and delivery to be completed in a workmanlike manner according to standard practices." We think that plaintiff's allegation of performance and supporting facts was sufficient under Supreme Court Rule 133(c) (87

Ill. 2d R. 133(c)). Facts supporting defendant's general denial were not advanced in the answer nor upon motion showing wherein there was a failure to perform, and we will not consider his novel argument on appeal. Moreover, the record considered entirely establishes full performance on plaintiff's part.

Next, defendant contends that plaintiff's pleading and proof were at fatal variance since the complaint alleged a contract with defendant and the proof related to a contract with either A & L Farms or Falconer. Plaintiff sued defendant individually for a debt allegedly resulting from the "request of defendant, or defendant's agent" to provide labor and materials. The evidence established a contract with Falconer, and West admitted that a partnership with Falconer existed. Plaintiff's pleading of agency in this regard and of a contract formed pursuant to the alleged agency is sufficient pleading of partnership upon which, if established by the proof, West could be found liable as a joint debtor. (See Ill. Rev. Stat. 1983, ch. 110, par. 2—410.) Thus, plaintiff's proof may have related to a contract with West, his agent or the partnership. Since the partnership was dissolved at the time suit was commenced and since Falconer was declared bankrupt, West was the only solvent debtor left and a proper party to sue for the dissolved partnership obligation. We are not persuaded that plaintiff's pleading and proof were at fatal variance.

Next, defendant contends that the evidence is insufficient to sustain recovery on the theory of a contract between plaintiff and the partnership. Defendant cites section 9 of the Uniform Partnership Act (Ill. Rev. Stat. 1983, ch. 106½, par. 9) for the proposition that absent proof of express authority, contracts made by a partner are not binding on the firm unless the contract is made in the ordinary course of partnership business. He concludes that since there is no evidence of Falconer's express authority to contract with plaintiff and no evidence that he ever held Falconer out as having such authority, plaintiff's claim must fail.

We do not accept this reasoning. Section 9 provides:

"(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." (Ill. Rev. Stat. 1983, ch. 106½, par. 9(1).)

Thus, an act of a partner in apparently carrying on in the usual way the business of the partnership binds the partnership *unless* he has no authority *and* the third party has knowledge that he has no authority. The existence of the partnership having been admitted, proof of express authority was unnecessary. Rather, it was defendant's burden to establish no authority and plaintiff's knowledge. Plaintiff, of course, must have established that Falconer's act was apparently done in carrying on the business of the partnership in the usual way.

Here the record establishes conflicting accounts of the extent of Falconer's partnership authority. West testified that Falconer did not have authority to contract for "major expenses" and that he told Falconer this long ago. Yet, Falconer did have authority to generally manage the farms purchased, and no other evidence of restricted authority was offered. Falconer testified that West knew about the attempts to procure bins and had discussed and participated in the matter several times himself. Stratemeyer testified that based on past experience he assumed Falconer had authority and was unaware of his lack of authority. Where the evidence is conflicting, we must defer to the trier of fact, who had a superior opportunity to observe the witnesses and assess their testimony and credibility. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.) We will not upset the trial court's implicit finding that Falconer was authorized to transact the instant business for and on behalf of the partnership, as it does not appear contrary to the evidence and indeed has support in the record. West need not have been aware of the contract to be held liable on it. See, *e.g., Gardenhire v. Ray* (1939), 302 Ill. App. 268, 23 N.E.2d 927.

Regarding defendant's contention that Falconer's act of contracting was not within the partnership's ordinary course of business, there was no specific finding made by the trial court on this issue. The record, however, contains sufficient indicia from which it may be reasonably concluded that, as general manager of the farming aspect of the partnership, Falconer was responsible for planting, harvesting, storing and selling the crops. As an incident of this farming business he contracted with Stratemeyer for the erection of grain storage bins. We think this act was within the scope of the partnership business. Moreover, Stratemeyer could rightfully assume that the contract was within the scope of the partnership's business. Finally, it is important to note that West testified that he had grain stored in the bins. That he has accepted a benefit from the contract makes his argument inappropriate.

Finally, defendant contends that the trial court improperly

struck the evidence deposition testimony of defendant's former attorney. It was offered for purposes of supporting defendant's own testimony regarding his prior testimony given in an ancillary action against Falconer in a bankruptcy proceeding. Defendant had been called as an adverse witness in the instant case and was impeached by prior inconsistent statements concerning the nature of the debt for which Stratemeyer sued him. His prior testimony included statements admitting that Stratemeyer had liens on the two subject farms, that the grain bins were purchased by the partnership and represented partnership debts and that he would be personally liable for the obligations to Stratemeyer should Falconer default in bankruptcy. Defendant was given ample opportunity to qualify his prior testimony and in fact, when called by his own counsel, fully explained that he did not understand the meaning of "partnership debt" and "lien." Defendant further explained that his prior testimony with reference to these terms was premised on the assumption that he would pay the debts in question only if they were proven to be valid.

Defendant argues that his former attorney's testimony was proper evidence for corroborating defendant's explanation of his prior testimony and for establishing the meaning he had ascribed to the legal terminology used and the circumstances surrounding his prior testimony.

In striking the proffered testimony the trial court reasoned that the defendant was available to explain or contradict his own former testimony. Since the court found that the proffered testimony established only what his former attorney thought or what he thought West thought and what pretrial preparation had been made in the former proceeding, the court further found the proffered testimony was irrelevant.

We find no reversible error in this regard. The trial court had previously admitted into evidence the transcript of the former proceeding. The court indicated that it would weigh the import of defendant's prior testimony and consider it for its worth. The court undoubtedly was aware of the nature of that proceeding and the context of defendant's testimony therein. We do not view defendant's admissions in the prior proceeding to be properly qualified or explained by his former attorney's interpretation of defendant's knowledge and understanding. This is true especially since the former testimony was elicited from West by his own attorney and it was motivated precisely for the contrary purpose then of establishing as true what West now denies. The proffered testimony is not so much irrelevant as incompetent evidence. Inasmuch as defendant testified to precisely the same issues as

those for which the deposition was offered in corroboration, we cannot say he was prejudiced by its exclusion.

For all of the foregoing reasons the judgment of the circuit court of Johnson County is affirmed.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.