603 A.2d 1357

**SEABOARD SURETY COMPANY**

v.

**RICHARD F. KLINE, INC.**

No. 873, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 8, 1992.

Charles Yumkas (Thomas A. Bowden and Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief), Baltimore, for appellant.

Phillips P. O'Shaughnessy (Robert W. Guth and Sanbower, Gabler & O'Shaughnessy, P.A., on the brief) Baltimore, for appellee.

Argued before BISHOP, GARRITY and MOTZ, JJ.

MOTZ, Judge.

The case presents the question of whether a subcontractor who contracts with a joint venturer has a "direct contract" with the joint venture itself so that the subcontractor is a "claimant" under a surety bond obtained by the joint venture. Because it is undisputed that when contracting with the subcontractor the joint venturer was acting on behalf and with the authorization of the joint venture, we hold that the subcontractor had a "direct contract" with the joint venture and so was a "claimant" under the surety bond. Accordingly, we affirm the order of the Circuit Court for Frederick County (Dwyer J.) granting the subcontractor summary judgment.

### (i)

On December 18, 1985, Carrollton Associates Limited Partnership ("the Owner") entered into a construction contract ("the Prime Contract") with American International Construction Corp. and Elion Concrete Inc. Joint Venture ("the Joint Venture") pursuant to which the Joint Venture would act as prime contractor and build a United States Department of Housing and Urban Development ("HUD") subsidized garden apartment project in Frederick, Maryland. The members of the Joint Venture were two corporations: American International Construction Corp. ("AIC") and Elion Concrete, Inc. ("Elion").

The prime contract, as is mandated in HUD-financed projects, required the Joint Venture to assure completion of the work in the form of performance and payment bonds. The joint venture agreement between AIC and Elion provided that AIC "would construct the Project for the Joint Venture, entering into contracts in ‹AIC's own name and paying all expenses of construction" and Elion would be responsible for obtaining surety bonds for the project and supplying additional capital that might be needed. Appellant, Seaboard Surety Company ("Seaboard") refused to

issue the bonds unless Elion pledged its credit. Elion pledged its credit, and on December 18, 1985, Seaboard issued the surety bonds to the Joint Venture. The price of the bonds was a reimbursable expense, *i.e.*, a cost which, under the Prime Contract, would be reimbursed by the Owner. AIC actually paid for those bonds but was reimbursed for that cost by the Owner.

The payment bond provides in pertinent part:

Know All Men By These Presents, *THAT WE American International Construction Corp./Elion Concrete, Inc., Joint Venture of Baltimore Maryland as Principal,* (hereinafter called the Principal) and Seaboard Surety Company, a New York Corporation as Surety, (hereinafter called the Surety) are held and firmly bound unto Carrollton Associates Limited Partnership, DBA Carrollton X Associates Limited Partnership as Obligee, (hereinafter called the "Owner"), for the use and benefit of claimants as hereinafter defined, in the sum of Eight Million One Hundred Sixteen Thousand Seven Hundred Twenty and 00/100 Dollars ($8,116,720.00), lawful money of the United States of America, for the payment of which Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

$$*\quad*\quad*\quad*\quad*\quad*$$

NOW, THEREFORE, THE CONDITIONS OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. *A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal* for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone

service, or rental of equipment directly applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that *every claimant* as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, *may sue on this bond for the use of such claimant,* prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon....

3. *No suit or action shall be commenced* hereunder *by any claimant:*

(a) *Unless claimant, other than one having direct contract with the Principal, shall have given written notice* to any two of the following: The Principal, the Owner, or the Surety above named, *within ninety (90) days* after such ... performed the last of the work ... stating with substantial accuracy the amount claimed and the name of the party to whom materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid ... or served *in any manner in which legal process may be served in the state* in which the aforesaid project is located....

(emphasis added.)

On March 18, 1986, AIC (not the Joint Venture) entered into a subcontract with appellee, Richard F. Kline, Inc. ("Kline"), pursuant to which Kline would furnish and install all bituminous paving on the project. In that subcontract, AIC identified itself as the Contractor; the cover of the specifications book identified the contractor as being "American Int'l Const., Inc./Elion Concrete Incorporated." The subcontract contains no signature line for Elion or the Joint Venture. Nothing in the text of the subcontract purports to bind the Joint Venture. The subcontract does

refer to the Prime Contract and arguably incorporates it by reference into the subcontract.

Kline performed paving work under the subcontract. Following a dispute over payment, Kline commenced an arbitration proceeding against AIC which resulted in an award for Kline against AIC in the amount of $140,000. On May 21, 1990, that award was confirmed by the Circuit Court for Baltimore City and judgment was entered for Kline against AIC. Kline was unsuccessful in collecting from AIC on this judgment.

Ultimately, Kline attempted to collect from Seaboard on the payment bond. Seaboard refused to pay. On September 13, 1990, Kline then filed this action against Seaboard in the Circuit Court for Frederick County where the project is located. On May 13, 1991, the Circuit Court issued a short order granting summary judgment for Kline.

On appeal, Seaboard raises three questions:

1. Whether one who contracts with a single member of a joint venture, rather than the joint venture itself, can qualify as a "claimant" on a payment bond that names the joint venture as principal and then defines "claimant" as one having a direct contract with the named principal.

2. In the alternative, whether any genuine factual dispute exists as to Kline's lack of contractual privity with the Joint Venture.

3. Whether any genuine factual dispute exists as to Kline's failure to provide the notice required by the payment bond to be given by one who claims under a contract with a sub-contractor.

(ii)

The facts set forth above are not disputed. There are, however, several other facts (discussed within) which are disputed. In light of Seaboard's claim that those facts prevent the grant of summary judgment to Kline, we state the appropriate principles to be applied in granting or denying summary judgment.

At one time, summary judgment was regarded by state and federal courts as a sort of procedural step-child, disfavored and not permitted out in polite society. Because summary judgment is, of course, not a substitute for trial, some appellate courts carelessly proclaimed that summary judgment was to be denied if there was *any* factual dispute or even any inference adverse to the movant which could be drawn from the facts. Indeed, appellate courts so constantly and consistently warned of the dangers of improperly granting summary judgment that trial courts became understandably reluctant to grant the remedy unless the litigants agreed on or stipulated to *every* fact.

The Court of Appeals, however, has for many years recognized that the summary judgment rule, Md. Rule 2–501 (1992 Repl. Vol.), means precisely what it says.[1] Thus, only a "genuine dispute" as to a "material fact" is relevant in opposing a motion for summary judgment. *See, e.g., King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Washington Homes, Inc. v. Inter Land Dev.,* 281 Md. 712, 716, 382 A.2d 555 (1978); *Lynx v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974); *Salisbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973). A material fact is one which will "somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608; *Washington Homes,* 281 Md. at 717, 382 A.2d 555; *Lynx,* 273 Md. at 8, 327 A.2d 502; *Salisbury,* 268 Md. at 41, 300 A.2d 367. A dispute as to a fact "relating to grounds upon which the decision is not rested is

---

[1]. Moreover, the Court of Appeals recently adopted modifications in the Maryland Rules which require the parties to specify in their motion for summary judgment or response those items they wish the trial court to consider in ruling upon the motion and limit the court's consideration to those items. *See* Md. Rule 3–311(b) and 2–501(e), amended as shown in Md. Reg., Vol. 18, issue 8, p. 85 (April 19, 1991). These changes are, in the words of the Reporter's Note, intended to make "trial courts ... more willing to grant [summary judgment] motions in appropriate cases without fear of being reversed when appellate counsel later discover some item in the record but not called to the trial court's attention that serves to create some dispute of material fact." Md. Reg., Vol. 17, issue 23, p. 2721 (Nov. 16, 1990).

not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment." *Salisbury,* 268 Md. at 40, 300 A.2d 367 (emphasis in original). *Accord Shaffer v. Lohr,* 264 Md. 397, 404, 287 A.2d 42 (1972); *Daniel v. Kensington Homes,* 232 Md. 1, 13, 192 A.2d 114 (1963).

 Moreover, in order to defeat a motion for summary judgment, the opposing party must proffer material facts which would be admissible in evidence. *Shaffer,* 264 Md. at 404, 287 A.2d 42; *Melbourne v. Griffth,* 263 Md. 486, 491, 283 A.2d 363 (1971) (reversing jury verdict for nonmovant and granting summary judgment to movant). When a moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with "some precision" that there is a genuine dispute as to a material fact. *King,* 303 Md. at 112, 492 A.2d 608; *Washington Homes,* 281 Md. at 717, 382 A.2d 555. Formal denials or general allegations are insufficient to prevent the award of summary judgment. *Id. See Davis v. Montgomery County,* 267 Md. 456, 472, 298 A.2d 178 (1972).

In 1986, the Supreme Court interpreted the very similar federal summary judgment rule, Fed R.Civ.P. 56, and issued a now famous trilogy of cases in which it confirmed many of the above principles. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Ltd.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[2] The Court expressly stated that sum-

---

**2.** The summary judgment principles articulated in *Anderson* and *Matsushita* have not been discussed in any reported Maryland appellate decisions. Those in *Celotex,* however, have been cited, *Yamaner v. Orkin,* 310 Md. 321, 323 n. 4, 529 A.2d 361 (1987), *Sparks State Bank v. Martin,* 81 Md.App. 539, 546, 568 A.2d 1140, *cert. denied,* 319 Md. 581, 573 A.2d 1337 (1990), and relied upon. *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 330–331, 545 A.2d 658 (1988); *Bennett v. Baskin & Sears,* 77 Md.App. 56, 72–74, 549 A.2d 393 (1988). None of these cases suggests that the principles enunciated by the Supreme Court are not equally applicable in construing Md. Rule 2–501. In-

mary judgment was not a "disfavored procedural shortcut." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. Thus, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. at 2510 (emphasis in original). "Factual disputes that are irrelevant or unnecessary will not be counted," *Id.* at 248, 106 S.Ct. at 2510, and when a movant has carried its burden, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. at 1356.

The Supreme Court explained that the summary judgment standard is akin to that of a directed verdict, *i.e.,* whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence in support of plaintiff's claim is insufficient to preclude the grant of summary judgment; rather, there must be evidence on which the jury could reasonably find for the plaintiff. Thus, in *Anderson,* the Supreme Court defined a "genuine" issue of "material fact" as follows:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be*

deed, it is well-established that because the Maryland summary judgment rule is derived from the federal rule, judicial interpretations of the federal rule are persuasive as to the meaning and proper application of the Maryland rule. *See, e.g., Metropolitan Mortgage Fund, Inc. v. Basiliko,* 288 Md. 25, 27, 415 A.2d 582 (1980).

*insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252, 106 S.Ct. at 2512 (emphasis added).[3]

With these principles in mind, we turn to the question of whether the controversy at hand was properly resolved by grant of summary judgment.

### (iii)

█ In its payment bond, Seaboard, the surety, and its principal, the Joint Venture, contracted with the Owner. They agreed that if a "claimant" was not paid for his work or labor under the prime contract, claimant could sue "on this bond for the use of such claimant." A "claimant" is defined in the payment bond "as one having a *direct contract* with the Principal or with a subcontractor of the Principal[4] for labor, material, or both, used in the perform-

---

**3.** The Court of Appeals has also noted the similarities in the trial court's "functions" when considering a summary judgment motion and a motion for directed verdict. *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979); *Washington Homes,* 281 Md. at 716, 382 A.2d 555; *Lynx,* 273 Md. at 8, 327 A.2d 502; *Salisbury,* 268 Md. at 41, 300 A.2d 367. Although in *Coffey v. Derby Steel Co.,* 291 Md. 241, 246–47, 434 A.2d 564 (1981), the court seemed to disavow this comparison at least in part, its actual holding is simply that reversal of a grant of summary judgment does not require reversal of a j.n.o.v. for the summary judgment movant. In light of the fact that the summary judgment movant produced much more evidence at trial, this does not seem remarkable. *See O'Hara v. Kovens,* 305 Md. 280, 301, 503 A.2d 1313 (1986) (when reversing grant of summary judgment court notes that this does not necessarily mean that court below was incorrect but only that on this record it was improper); *see also Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 327, 389 A.2d 887 (1978) (differences in summary judgment and directed verdict procedures mean that "grant of summary judgment cannot serve as the basis" for a j.n.o.v.).

**4.** In addition to its claim that it had a direct contract with the Principal, *i.e.,* the Joint Venture, Kline also asserts that, at the very least, it has a direct contract with "a subcontractor of the Principal." The payment bond provides that a claimant's suit against a subcontractor of the Principal can be maintained only if the claimant provides written notice of the claim in writing within ninety days of the last work performed to "any two of the following: the Principal, the Owner of the Surety." (There is no notice requirement for those

ance of" the Prime Contract. Seaboard, quoting *General Builders Supply Co., Inc. v. MacArthur*, 228 Md. 320, 326, 179 A.2d 868 (1962), acknowledges that the "liability of a surety is coextensive with that of the principal, and it is clear that the liability of the surety is measured by the contract of the principal." Further, Seaboard concedes that Kline had a direct contract with one joint venturer, AIC, and that the two joint venturers agreed that "AIC would construct the Project for the Joint Venture, entering into contracts in AIC's own name and paying all expenses of construction." Seaboard insists, however, that at the very least,[5] factual disputes exist as to whether Kline, because it had a direct contract with one of the two joint venturers, AIC, also had a direct contract with the Joint Venture itself, which was the principal on the bond.

Specifically, Seaboard claims that the following factual disputes prevent the grant of summary judgment for Kline:

1. Whether AIC intended to extend only its "credit" to Kline and Kline intended to rely solely on AIC's "credit," as is stated in an affidavit of AIC's majority stockholder;

2. Whether Seaboard admitted that AIC is its principal because, in a letter, a Seaboard employee referred to AIC as "our principal," or was that employee "factually mistaken" as another Seaboard employee stated in a later affidavit;

3. Whether AIC is the "general contractor" of the project as an attorney at AIC stated in the arbitration proceedings or whether this was a mistake as the attorney now asserts in an affidavit; and

---

having a "direct contract with the Principal.") Seaboard claims Kline did not provide the required notice. In light of our holding within, we need not, and do not, reach this question.

**5.** Alternatively, Seaboard claims that "one who contracts with a single member of a joint venture rather than the joint venturer itself cannot qualify as a 'claimant,'" as a matter of law and so summary judgment should have been granted in its favor. For the reasons set forth in text within, we reject this argument.

4. Whether the fact that AIC paid for the payment bond proves that AIC was the principal on the bond or whether this was a matter of convenience, evidencing nothing.

Clearly, there are disputes as to these facts; however, resolution of these disputes makes no difference in the determination of the legal question at issue here. The disputes identified here are not of material facts and, thus, do not prevent the grant of summary judgment.

■ This is so because of certain established principles governing the law of joint ventures and partnerships which make these facts irrelevant and certain undisputed facts controlling. Under Maryland law, a joint venture, like that at issue here, "has been defined as '[a]n association of two or more persons to carry out a single business enterprise for profit,' and as 'a partnership for a single transaction.'" *Herring v. Offutt*, 266 Md. 593, 596–597, 295 A.2d 876 (1972) (*citing* James M. Mullen, *Joint Adventures*, 8 *Md. L. Rev.* 22 (1943)); Md. Corps. and Ass'ns Code Ann. § 9–101(f) (1985). As a partnership, the Joint Venture's conduct is governed by the Maryland Uniform Partnership Act, Md. Corps. & Ass'ns Code Ann. § 9–101 *et seq.* Section 9–301(a), "Acts of partners bind partnership," provides "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, ... for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, ..." [6]

---

6. "The Uniform Partnership Act gives rise to a presumption of a partner's authority and agency to act for the partnership and his partners, providing that every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." 59A Am.Jur.2d *Partnership* § 249 (1987) (footnotes and citations omitted).

■ When these principles are applied in the case at hand, it becomes clear that the facts critical to the determination of whether Seaboard is liable under the bond to Kline are undisputed. As a matter of law, the Joint Venture is a "partnership for a single transaction." *Herring*, 266 Md. at 596–97, 295 A.2d 876. It is undisputed that AIC is a venturer or partner in the Joint Venture. It is further undisputed that AIC, as a partner in the Joint Venture, was "apparently carrying on the business" of the Joint Venture "in the usual way" when contracting with Kline.[7] Thus, as a matter of law, AIC's contract with Kline "binds" the Joint Venture. Md. Corps. & Ass'ns Code Ann. § 9–301(a). Seaboard concedes, as it must, that its liability is "co-extensive" with that of its principal, the Joint Venture. *General Builders*, 228 Md. at 326, 179 A.2d 868. Therefore, since the Joint Venture is "bound" on AIC's contract with Kline, Seaboard is "bound" to pay Kline as a proper claimant under the payment bond.

Seaboard does not dispute the validity of the legal principles and authorities relied upon above. Indeed it admits that if "AIC had entered into a contract *in the name of the Joint Venture*, then AIC's power to do so could hardly be questioned on the evidence in this record" (emphasis in original). Seaboard maintains, however, that the fact that AIC entered into the contract with Kline *in its own name* means that only AIC is bound on the contract. In support of this argument, Seaboard cites the following proposition from 3 Am.Jur.2d *Agency* § 279 (1986): "If a party is informed that the person with whom he deals is merely the agent for another, and yet he prefers to contract with the

7. In fact, it is undisputed that AIC had not just "apparent" authority but actual authority to act on behalf of the Joint Venture when contracting with Kline. Seaboard submitted the affidavit of Nathan Schweitzer, the owner of all of the stock of Elion and 89% of the stock of AIC, that the "joint venture agreement between AIC and Elion provided that ... AIC would construct the Project *for the Joint Venture, entering into contracts in AIC's own name and paying all expenses of construction.*" (emphasis added.) Hence, Kline need not rely upon the "presumption" discussed *supra* at n. 6.

agent personally on his own credit, he will not be allowed afterward to charge the principal." What Seaboard ignores, and what the treatise itself makes clear a few lines later, is that in "order for this rule of nonliability of the principal to apply, however, it is necessary for both the creditor and the agent to have the same understanding— that is, that the agent is personally and solely bound to pay the debt." *Id.*

Here, although there is no definitive evidence in the record as to the "understanding," on this point, of the creditor, Kline, the principal stockholder of both AIC and Elion has, in sworn affidavit, clearly stated that this was *not* the understanding of the agent, AIC, *or* even the principal, the Joint Venture. Rather, he stated that both joint venturers *agreed* that AIC "would construct the project *for the Joint Venture*" by entering into contracts in "its [AIC's] own name." Thus, it is undisputed that both the agent and the principal understood that the agent would *not* be personally and solely bound in contracts entered into to construct the project. Even though these contracts were entered into in the agent's name, it was agreed that the agent was constructing the project *for* the Joint Venture. In sum, rather than the principal (the Joint Venture) proving that the agent (AIC) understood that it was "personally and solely bound to pay the debt," here exactly the opposite was conceded by the principal. That is, the Joint Venture agreed that the agent, AIC, had authority to bind the Joint Venture when contracting to construct the project with subcontractors like Kline. Thus, the "rule of nonliability of the principal" simply does not apply here, even according to the treatise upon which Seaboard relies. *See* 3 Am.Jur.2d *Agency* § 279, *supra.*

The two cases upon which Seaboard also relies in support of this argument are equally unhelpful to its cause. One case is inapposite; [8] the other does involve a factual scenario

---

8. That case is *Ford v. Williams,* 62 U.S. (21 How.) 287, 289, 16 L.Ed. 36 (1858) in which the sole holding is that an undisclosed principal *can*

similar to that in the case at hand but supports the result reached here, rather than that sought by Seaboard. *See Rochell v. Moore–Handley Hardware Co.*, 239 Ala. 555, 196 So. 143 (1940). In *Rochell*, as here, a principal claimed that because an agent signed his own name to a contract with a creditor, only the agent and not the principal was bound by the contract. *Rochell*, 239 Ala. at 556, 196 So. 143. The court held that it was the principal's burden to establish that it was the intention of both the agent and the creditor to bind only the agent, and that the jury was justified in concluding that there was an agency and that the agent "was authorized to act for and bind the principal." *Id.* Therefore, the principal was held bound on the contract with the creditor, made by the agent *in its own* name. *Id.* The only difference between *Rochell* and the case at hand is that here the agent's authorization is undisputed, so there is no jury issue.

We note that other jurisdictions have similarly recognized that a contract made for the partnership's benefit is binding on it, *even though made only by one partner. See, e.g., Stratemeyer v. West*, 125 Ill.App.3d 597, 80 Ill.Dec. 854, 857, 466 N.E.2d 306, 309 (1984), (principle applied even when partnership is subsequently dissolved); *Beane v. Bowden*, 399 So.2d 1358, 1360 (Miss.1981) ("one partner acting alone" binds the other partner if act is "within the scope of the partnership"); *Bay v. Barenie*, 421 N.E.2d 6 (Ind.App.1981) (excavator who enters into subcontract with one partner of land development contract can recover from partnership); *Refrigeration Engineering Co. v. McKay*, 4 Wash.App. 963, 486 P.2d 304, 311 (1971) (if joint venturers associate to promote a corporation and one of the joint venturers "makes a contract which is within the scope of the promotion, all of them are liable on the contract"); *Seybolt v. Bio–Energy of Lincoln, Inc.*, 38 B.R.123 (Bank.Mass.1984).

---

"maintain an action on a written contract made by his agent" in the agent's own name. No party disputes the validity of this proposition.

In sum, it makes no difference that the subcontract with Kline was executed only by AIC. Since AIC was a partner, see *supra* at n. 6, and since it and the other partner, Elion, have conceded that it was agreed that AIC "would construct the project for" the partnership, AIC's subcontract with Kline, in furtherance of construction of the project, bound the partnership, *i.e.*, the Joint Venture. The liability of Seaboard, the Joint Venture's surety, is "coextensive" with that of its principal, the Joint Venture. *General Builders, supra,* 228 Md. at 326, 179 A.2d 868. Accordingly, as a matter of law, Seaboard is liable to Kline as a claimant on the payment bond. The grant of summary judgment was proper.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.