696 A.2d 482

**Theresa A. KIMMEL,**

v.

**SAFECO INSURANCE COMPANY.**

**No. 1461, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

July 2, 1997.

---

John J. O'Loughlin, Oxon Hill, for appellant.

H. Patrick Stringer, Jr. (Mudd, Harrison & Burch, on brief), Towson, for Appellee.

Argued before MOYLAN, HOLLANDER, and THIEME, JJ.

HOLLANDER, Judge.

Theresa A. Kimmel, appellant, brought suit against SAFE-CO Insurance Company, appellee, in the Circuit Court for Prince George's County, alleging breach of an insurance con-

tract. Appellant claimed that she was improperly denied benefits under the uninsured motorist provisions of her motor vehicle insurance policy (the "Policy"). She challenges the entry of summary judgment in favor of appellee, and poses the following questions:

I. Are the purported exclusions as to uninsured motorist coverage invalid because the exclusions are not authorized by statute?

II. Do essential differences between liability and uninsured motorist coverage make the purported exclusions as to uninsured motorist coverage void against public policy?

III. Is appellant's complaint barred by the defenses of accord and satisfaction?

We answer question three in the affirmative, and shall therefore affirm. As question three is dispositive of the matter, we need not address appellant's other questions.

### Factual Background

On August 22, 1992, appellant, who was a passenger in an automobile, was severely injured in a one car accident. The accident occurred because appellant's husband, who was driving, fell asleep at the wheel and collided with a guard rail. Appellant's medical expenses exceeded $70,000.

Both appellant and her husband owned the vehicle involved in the accident, which was insured by appellee under SAFE-CO Policy No. F01171048. The Policy provided $500,000 of liability coverage and $300,000 of uninsured motorist coverage, subject to certain limitations and exclusions. The liability section of the Policy contained the following "household exclusion":

This policy does not apply under the Liability Section:

\* \* \* \* \* \*

11. for any person for bodily injury to the named insured or any relative to the extent that the limits of liability for bodily injury liability coverage exceed the limits of liability required by the Maryland Vehicle Laws—Required Security;

By statute, an automobile insurer must provide a minimum of $20,000 in liability coverage for bodily injury to one person. Maryland Code (1957, 1992 Repl.Vol.), § 17–103(b) of the Transportation Article ("T.A."). Appellee determined that the Policy's household exclusion reduced the liability coverage of the Policy from $500,000 to the statutory minimum of $20,000. Appellee then sent appellant a letter, dated September 24, 1992, along with a check, dated September 29, 1992, for $20,000. The letter, which referred to the policy in issue and the date of loss that corresponded to the accident date, stated in part:

Enclosed please find a release and payment of $20,000. This represents the amount recoverable under your SAFE-CO automobile policy number F01171048.

Please forward your hospital bills, shock trauma and Mt. Vernon when you receive them. We have already paid your personal injury protection limits of $2,500; however, we have done so without a bill. I need the bill for our records and documentation.

Again, please do not delay in forwarding the medical bills. Please sign the enclosed release and return to my attention.[1]

The check for $20,000 included information on its face that is relevant here. It contained pre-printed categories, including the loss date, the claim number, the policy number, the insured, the agent, and the coverage. All of the categories were completed by hand. The notation "abi" was written under the reference to "coverage." In addition, the following phrase was handwritten under the line where the amount of the check was stated in words: "full & final payment of all claims." Thereafter, appellant accepted the $20,000 check; she endorsed it and, on October 7, 1992, it was stamped "paid".

On September 28, 1992, appellant's son, an attorney, wrote a letter to appellee that stated, in pertinent part:

---

1. We have not been provided with a copy of the "release."

Just a short note to follow up on your settlement letter of September 10, 1992[2] to Theresa Kimmel. This is to confirm that the offer of $20,000.00 to Mrs. Kimmel will not in any way impair her right to seek recovery under the medical provisions of this policy. If there is anything incorrect about this please notify me immediately.

Based on the household exclusion, appellee reduced the amount of liability coverage to $20,000, as we noted. This essentially created a situation in which the driver—appellant's husband—was "underinsured."[3] Consequently, appellant sought additional recovery under the uninsured motorist protection of her Policy, because the payment under the liability portion of the Policy was less than the $300,000 in uninsured motorist coverage that she thought was available to her. When appellee declined to pay appellant additional monies, appellant instituted suit.

The insurer subsequently moved for summary judgment, claiming: 1) the insurance policy excluded recovery under the uninsured motorist coverage for an accident involving a motor vehicle insured under the policy; 2) the uninsured motorist coverage contained a family member exclusion; 3) appellant had released appellee from further claims; and 4) the claim was barred by accord and satisfaction.

Appellant opposed the motion on statutory and public policy grounds. She argued, *inter alia*, that the Policy illegally defined an uninsured motorist to exclude an owned vehicle insured in any amount. She claimed that the Policy improperly excluded coverage for a passenger/insured who was injured in an accident for which the driver/insured's liability coverage was less than the amount of the Policy's uninsured motorist

---

**2.** The record does not contain a letter from appellee dated September 10, 1992.

**3.** By statute, an uninsured motor vehicle is defined to include a vehicle that is "underinsured." Maryland Code (1957, 1991 Repl.Vol.), Article 48A, § 541(c)(1) provides that an uninsured motor vehicle includes a motor vehicle for which the sum of the limits of liability coverage is less than the limits of the injured person's uninsured motorist coverage.

coverage. *See* Maryland Code (1957, 1991 Repl.Vol.), Article 48A, § 541(c)(1). She also contended that the Policy violated Art. 48A, § 541(g)(1), which requires the insurer to provide uninsured motorist coverage equal to the amount of liability coverage, unless waived by the insured. Further, appellant denied that she released appellee from all claims or that the parties had entered into an accord and satisfaction. Rather, it was her understanding that the money she received only represented payment under the liability portion of her Policy.

In an affidavit appended to her opposition to appellee's motion, appellant averred, in pertinent part:

1. I received a check in the amount of $20,000 from my insurer, Safeco Insurance Company, and a cover letter, dated September 24, 1992, from Safeco.... At the time I received and negotiated this check, I was suffering from severe injuries sustained in the subject motor vehicle collision on August 22, 1992. I did not intend to release Safeco from liability under the uninsured motorist coverage of the policy which is the subject of this case. It was my understanding that the check represented liability coverage only, and it was endorsed by me only as payment of the $20,000 liability coverage under the policy, and not a release in full of all claims under the policy. I never intended to release Safeco from coverage for uninsured motorist coverage, PIP coverage, or any coverage other than liability coverage.

Appellant also argued in her legal memorandum that SAFECO's payment "was only in settlement of coverage A and B. Coverage G, uninsured motorist coverage, is not referred to in the check, nor is it referred to in the cover letter." Apparently, she was referring to the "abi" notation on the $20,000 check, suggesting that this meant the check only pertained to coverage under sections A and B of the Policy, which are the liability and property damage sections, but not the uninsured motorist coverage contained in section G of the Policy.

On June 5, 1996, appellant filed a motion for partial sum-

mary judgment on the issue of "liability." [4] At the subsequent motions hearing, the parties primarily focused upon several insurance law issues. Appellee also renewed its contention that accord and satisfaction barred appellant's recovery. We need not explore the arguments concerning the insurance issues, because they are not pertinent to our resolution of this case. We note, instead, that appellant did not address appellee's assertion that her claim was barred by the doctrine of accord and satisfaction. In granting appellee's motion for summary judgment, the court incorporated "by reference the points and authorities of the defendant, Safeco Insurance Company."

### Standard of Review

To grant summary judgment, a trial court must determine that the parties do not dispute any material fact, and that one party is entitled to judgment as a matter of law. Md.Rule 2–501; *see also Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bagwell v. Peninsula Regional Med. Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied,* 341 Md. 172, 669 A.2d 1360 (1996); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co.,* 97 Md.App. 557, 576–77, 631 A.2d 485 (1993), *cert. denied,* 333 Md. 385, 635 A.2d 425 (1994). Summary judgment is not a procedural shortcut to avoid a trial, however. Rather, it is an appropriate method of deciding cases when the parties do not dispute the material facts. *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242, 603 A.2d 1357 (1992).

---

4. Appellant had initially requested a hearing on appellee's motion but, on March 15, 1996, the court granted appellee's motion without a hearing. It also entered an order denying "the Plaintiff's Motion For Summary Judgment," although appellant had apparently not filed such a motion. On March 25, 1996, appellant filed a combined motion for reconsideration, motion to alter or amend the judgment, and a request for a hearing. She asserted that under Maryland Rule 2–311, she was entitled to a hearing concerning appellee's motion for summary judgment, as she had made a formal request for such a hearing. On April 10, 1996, the court entered an order vacating the grant of summary judgment in favor of appellee.

In order to defeat a motion for summary judgment, the party opposing the motion must present admissible evidence to show the existence of a dispute of material fact. *Bagwell,* 106 Md.App. at 488, 665 A.2d 297; *Commercial Union Ins. Co. v. Porter Hayden,* 97 Md.App. 442, 451, 630 A.2d 261 (1993), *rev'd on other grounds,* 339 Md. 150, 661 A.2d 691 (1995). A party cannot establish the existence of a dispute merely by making formal denials or general allegations of disputed facts. *Bagwell,* 106 Md.App. at 488, 665 A.2d 297; *Seaboard Surety,* 91 Md.App. at 243, 603 A.2d 1357. Further, the evidence offered to show the existence of a dispute of fact must be sufficiently detailed and precise to enable the trial court to make its ruling as to the materiality of the proffered fact. *Beatty,* 330 Md. at 738, 625 A.2d 1005; *Bagwell,* 106 Md.App. at 489, 665 A.2d 297.

Even if there are disputed facts, they will not bear on the determination of a motion for summary judgment, unless they are material. Thus, the threshold question in resolving a summary judgment motion is whether there is a dispute of *material* fact. *Warner v. German,* 100 Md.App. 512, 516, 642 A.2d 239 (1994). A fact is material if the outcome of the case would be different depending on how the factfinder resolved the disputed fact. *Keesling v. State,* 288 Md. 579, 583, 420 A.2d 261 (1980); *Miller v. Fairchild Indus.,* 97 Md.App. 324, 340, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993).

In the absence of a dispute as to a material fact, we must determine whether the trial court reached the correct legal result in granting summary judgment. *Beatty,* 330 Md. at 737, 625 A.2d 1005; *Bagwell,* 106 Md.App. at 488, 665 A.2d 297. Appellate courts generally review a grant of summary judgment based only on the grounds relied upon by the trial court. *Blades v. Woods,* 338 Md. 475, 659 A.2d 872 (1995); *Gross v. Sussex Inc.,* 332 Md. 247, 254 n. 3, 630 A.2d 1156 (1993); *Hoffman v. United Iron and Metal Co.,* 108 Md.App. 117, 132–33, 671 A.2d 55 (1996). If the trial court did not specify the grounds upon which it granted summary judgment, appellate courts assume that the trial court "carefully consid-

ered all of the asserted grounds and determined that all or at least enough of them ... were meritorious." *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 133, 623 A.2d 731 (1993).

## Discussion

Appellant contends that the defense of accord and satisfaction is not applicable; she asserts that there was no "settlement" of a "disputed claim," and thus her acceptance of SAFECO's check did not determine all of her rights under the Policy. Rather, she argues that the money pertained only to certain coverages under the Policy. In this regard, she relies on her affidavit and the letter from her son to SAFECO as evidence that she did not intend to release her rights under the Policy. Based on the notation of "abi" under the coverage section on the face of the check, appellant also suggests that there is a factual question as to whether the $20,000 check, by its terms, "limited the settlement to coverages 'A and B,'" the Policy's bodily injury liability and collision coverages. She points out that the uninsured motorist coverage is in section G of the Policy, and no reference to section G appears on the $20,000 check.

Appellee counters that an accord and satisfaction arose once appellant accepted the check, as it clearly indicated that it was intended as payment in full under the Policy. It further argues that the intent of the recipient of the check is not dispositive. To the contrary, it asserts that it is the intent of the party tendering the check that controls.

As early as *Scheffenacker v. Hoopes,* 113 Md. 111, 77 A. 130 (1910), the Court of Appeals sustained a directed verdict for the defendant based on the principles of accord and satisfaction. There, the plaintiff, a publisher of catalogues, had filled an order for the defendant, apparently for catalogues in his livestock business. The defendant was dissatisfied with the catalogues and, upon receiving a bill for $722.40 from the plaintiff, instead sent partial payment. Enclosed with the check was a letter stating:

I enclose a check ... intended to be in settlement of bill for printing catalogues, which you rendered me under date of October 20th. You know my dissatisfaction with your work. Your failure to do it properly has caused me great damage and injury. I should require you to make my loss good, but I do not wish a controversy, and rather than have one I am enclosing check for ($361.20), one-half of your bill, in full settlement thereof. If you do not care to accept such a compromise, do not use my check, and I will then reserve the right to claim for the damage I have suffered."

In a return letter, the plaintiff protested that the amount of money was inadequate in light of the work he had done. He stated that he was unable to use the check unless the defendant assured him that the check was "not intended as full payment but only as part payment." Nevertheless, the plaintiff sent the check to the defendant's bank for certification. Consequently, funds from the defendant's account were allocated to cover the amount of the check.

The Court explained the defense of accord and satisfaction:

The principles applicable to a defense of this character are well settled. In the case of a liquidated claim, such as the present one may be assumed to be for the purposes of this decision, an acceptance of part of the amount in satisfaction of the whole will bar a recovery of the remainder if the settlement is supported by some consideration additional or collateral to the partial payment. "Anything which would be a burden or inconvenience to the one party or a possible benefit to the other" may constitute such a consideration; and the compromise of a disputed claim is a familiar and favored basis for an accord and satisfaction.

*Scheffenacker*, 113 Md. at 115, 77 A. 130 (citations omitted). By submitting the check for certification, the Court concluded that the plaintiff had accepted the conditions attached to the check, and thus created an accord and satisfaction. Of particular relevance here is the following comment by the Court:

The plaintiff's expression of dissatisfaction with the defendant's proposal could not qualify the effect of his actual use

of the check and appropriation of the defendant's money through its certification, in view of the terms of compromise under which alone it could be used. It was the *use* of the check that determined the question of the acceptance of the offer and not the verbal dissent by which it was accompanied.

*Scheffenacker*, 113 Md. at 117, 77 A. 130. *See also Hodgson v. Phippin*, 159 Md. 97, 99, 150 A. 118 (1930) ("The ordinary understanding of a tender of a portion of an amount claimed in full satisfaction of the whole seems to be that it constitutes a conditional offer, that acceptance of the money involves acceptance of the condition, and results in an accord and satisfaction of the whole claim, discharging the unpaid portion."); *cf. Eastover Co. v. All Metal Fabricators, Inc.*, 221 Md. 428, 433, 158 A.2d 89 (1960) (stating that a liquidated and *undisputed* claim is "not discharged by the payment of a lessor amount than that due").

On several occasions, this Court has also held that, when a claim is disputed, acceptance of payment, coupled with knowledge that payment is intended fully to satisfy a disputed claim, constitutes an accord and satisfaction that bars any further recovery. *Loh v. Safeway Stores, Inc.*, 47 Md.App. 110, 422 A.2d 16 (1980), is particularly instructive. There, a food manufacturer's insurer tendered the sum of $1,000 to the plaintiff after she suffered a broken tooth while eating a frankfurter. The parties had not negotiated a settlement, but the check was accompanied by a letter stating that it was " 'intended to be in full payment of Mrs. Loh's claim.' " *Loh*, 47 Md.App. at 112, 422 A.2d 16. Although the insurer denied liability, it stated that it wanted an " 'amicable conclusion' " to the claim, and the check represented the " 'maximum value to us for settlement of this claim.' " *Id.* After plaintiff's counsel deposited the check and distributed the proceeds to the plaintiff, counsel responded to the insurer by letter stating that neither he nor his client considered the $1,000 payment as full "settlement" or "satisfaction" of plaintiff's claim. *Id.* at 112–13, 422 A.2d 16.

Subsequently, suit was instituted against both the food producer and the grocery store that sold the frankfurters. The trial court later granted defense motions for summary judgment. Relying on *Scheffenacker* and *Hodgson*, we said:

> [W]e believe it is clear that, in Maryland, when one party tenders a check in settlement of a dispute, making clear that the tender will satisfy the claim against the tendering party if accepted, the party who accepts and uses the check, even though protesting against settlement, cannot make further claim against the tendering party. Here, the insurer's letter made clear that the $1,000 check tendered on November 21, 1977 was "the maximum value to us for settlement of this claim." Appellant accepted the settlement by depositing the check, regardless of appellant's counsel's protestations to the contrary. As between appellant and [the insurer], there was an accord and satisfaction.

*Loh*, 47 Md.App. at 116, 422 A.2d 16. Nevertheless, for reasons not relevant here, the Court determined, based on the Uniform Contribution Among Tortfeasors Act,[5] that the trial court erred in granting summary judgment. It made clear, however, that the food producer's liability could not exceed the $1000 that had been paid to the plaintiff. *Id.* at 129–30, 422 A.2d 16.

We are also guided by the case of *Washington Homes v. Baggett*, 23 Md.App. 167, 326 A.2d 206 (1974). There, the defendant, a land developer, sent letters of explanation and checks to prospective home buyers in the amount of the deposit paid by the buyers, after the financing bank designated in the construction contract refused to finance the building program. Thereafter, the buyers sued for specific performance of the contracts. Noting that if the contracts were terminated, actions for specific performance would not lie, we analyzed whether the parties had entered into an accord and

---

5. The Uniform Contribution Among Tort–Feasors Act is currently found in Code, Article 50 (1957, 1994 Repl.Vol.), §§ 16–24. The statute spells "Tort–Feasors" as we have indicated in this footnote.

satisfaction. We explained the nature of an accord and satisfaction:

"To constitute an accord and satisfaction in law ... it is necessary that the offer of money be made in full satisfaction of the demand or claim of the creditor, and be accompanied by such acts or declarations as amount to a condition that if the money is accepted, it is to be in full satisfaction and of such a character that the creditor is bound to understand the offer."

Professor Corbin, in his treatise on the law of contracts (Vol. 6, § 1277) puts it this way:

"There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise."

*Washington Homes,* 23 Md.App. at 174, 326 A.2d 206 (citations omitted). We also observed that previous decisions by the Court of Appeals were

in accord with 6A. Corbin, *Contracts,* § 1279 (1962) wherein it is said:

"The cashing, or the certification, of a check expressly sent in full settlement of a disputed claim, operates as an accord and satisfaction if, at the time, no word of dissent is sent to the party offering it in satisfaction."

*See also* 15 S. Williston, *Contracts,* § 1854 (3d ed. 1972) which states,

"As a matter of law, the use or retention of the check by the creditor, with knowledge of the condition, is regarded as an assent to it."

*Id.* at 175–76, 326 A.2d 206.

We determined that the letters sent to the prospective home buyers made it "explicit" that the developer considered the contract terminated, and the accompanying checks "expressly" mentioned refunds of the deposits. The buyers did not communicate any dissatisfaction with the cancellation. Instead, they cashed the checks, thereby accepting the cancellation.

Thus, they could not sue for specific performance of the contract.

The case of *Air Power, Inc. v. Omega Equipment Corp.*, 54 Md.App. 534, 459 A.2d 1120 (1983), is also noteworthy. In that case, the plaintiff obtained a judgment by confession against the defendant in the amount of $23,269.03, plus $3,275.34 in attorney's fees. To satisfy the judgment, the plaintiff attached certain property owned by the defendant. Subsequently, the defendant delivered to the plaintiff a cashier's check in the amount of $18,085.61, bearing the notation that it was in full settlement of all claims between the two parties. Along with the check, the defendant included a letter stating:

Attached hereto and tendered to you is a cashier's check payable to AIR POWER, INC. and [counsel] in the amount of $18,085.61 which represents the amount of the judgment in case No. 21498 in the Circuit Court for Montgomery County, Maryland less valid charges to and contracted by AIR POWER, INC. These charges have not been credited as agreed and required.

We request and demand that you immediately notify all courts and governmental authorities where you have filed notification of your claim that you no longer have a claim against OMEGA EQUIPMENT CORPORATION and to release to OMEGA any assets or other items seized by reason of your claim or actions. Specifically your failure to withdraw your claim to Gradall G–660 S/N 192777 in Louisa County, Virginia represents lost revenue of $75.00 per hour.

Although the plaintiff negotiated the check, the plaintiff responded by letter, advising that it considered the check as "partial payment" and stating that the "unilateral attempt to term [the check] full payment is rejected." Nevertheless, we affirmed the trial court's determination that the judgment was satisfied based on an accord and satisfaction. Relying on *Scheffenacker*, we said:

On the basis of the evidence before him, [the trial court] concluded that appellant's deposit of the cashier's check,

knowing that it had been tendered in full satisfaction of all claims, was an acceptance of the settlement, constituting an accord and satisfaction.... We agree with that conclusion and shall affirm the order.

*Air Power*, 54 Md.App. at 541–42, 459 A.2d 1120.

In reaching this conclusion, the Court rejected the plaintiff's contentions that there was no consideration for the partial payment, that there was no disputed claim between the parties, and that the plaintiff had not agreed to the proposed compromise. We said:

In *Jacobs v. Atlantco Ltd. Partnership*, 36 Md.App. 335, 340–41, 373 A.2d 1255 (1977), we noted that the authorities are generally in agreement in discussing the law of accord and satisfaction and we accepted, as a clear capsule definition, the one found in 1 C.J.S., *Accord and Satisfaction*, § 1:

"Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance."

Thus, if a creditor has an undisputed liquidated claim against a debtor and the debtor in turn has a genuine disputed claim against the creditor, the creditor's acceptance of the debtor's tender of a lesser sum than the liquidated claim in full settlement of all claims between them is an accord and satisfaction. The forbearance to press the disputed claim against him is the consideration additional or collateral to the partial payment which supports the creditor's relinquishment of the residue of the debt due him. But forbearance, to be adequate consideration, must be forbearance of a claim which is asserted in good faith. This does not mean that the one asserting the claim must believe that a suit on it can be won. It does mean, however, that the claim is not made for purposes of vexation or "in order to realize on its nuisance value." 1 Corbin, *Contracts*, § 140 (1963 & Supp.1971).

*Air Power,* 54 Md.App. at 538–39, 459 A.2d 1120. *See also Automobile Trade Assoc. of Maryland v. Harold Folk Enterprises,* 301 Md. 642, 666, 484 A.2d 612 (1984) ("An accord and satisfaction is essentially contractual, consideration for which can take monetary or non-monetary forms.").

These authorities are persuasive. Neither the letter from appellant's son, nor appellant's subjective intention, can salvage appellant's claim. Although appellant's son, an attorney, wrote to SAFECO on September 28, 1992 in an attempt to preserve appellant's rights under the Policy's "medical provisions," he never specifically asserted a claim or right of recovery under the uninsured motorist provisions of the Policy. At best, his letter suggests that appellant *believed* that she had a right to additional coverage under the Policy. At that point, she had a "dispute" as to her entitlements under the Policy. If appellant disagreed with the insurer's assertion that she was only entitled under the Policy to $20,000, it was incumbent upon her to decline acceptance of the check. This is especially apparent here, because there was no evidence that SAFECO ever agreed not to foreclose appellant's rights to pursue other claims if she accepted the check.

Moreover, the check from SAFECO put appellant squarely on notice that SAFECO tendered its check in full settlement of *all* claims under the Policy. SAFECO's accompanying letter similarly conditioned the $20,000 payment. In thereafter accepting the check, to which the condition of finality had been explicitly expressed by SAFECO, appellant acceded to the condition attached by appellee.

We must necessarily reject appellant's contention that no accord and satisfaction was created because she believed that the notation of "abi" on the check referred only to coverage under sections A and B of the Policy. To begin with, this explanation is not plausible, because there is no section "a" or "b" in the Policy. Moreover, appellant has never offered any explanation as to what she thought the "i" meant in "abi." In any event, we fail to see how the reference to "abi" can overcome crystal clear language in the letter and on the check

itself that payment was tendered in satisfaction of *all* claims under the Policy. Appellant's subjective belief cannot create a dispute of material fact; in this context, what appellant thought "abi" meant is wholly irrelevant.

Accordingly, we conclude that appellant was not entitled to lodge another claim against appellee for the same occurrence for which she had already accepted payment. Rather, the doctrine of accord and satisfaction barred her from any further recovery. Therefore, we shall affirm the entry of summary judgment in favor of appellee.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY COSTS.**