653 A.2d 947

**Norman TAYLOR**

v.

**Karl FEISSNER.**

**No. 576, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 4, 1995.

Reconsideration Denied Feb. 28, 1995.

358

Norman H. Taylor, Silver Spring, for appellant.

Alvin I. Frederick and James E. Dickerman (Eccleston and Wolf on the brief), Baltimore, for appellee.

Argued before ALPERT, BLOOM and DAVIS, JJ.

DAVIS, Judge.

On December 2, 1993, Norman H. Taylor filed a complaint in the Circuit Court for Montgomery County against attorney Karl G. Feissner. The complaint alleged that Feissner was negligent in his handling of Taylor's claim against the U.S. Department of Commerce for age discrimination. In addition to the value of Taylor's discrimination claim, the alleged damages included $30,000 in legal fees paid to Feissner over a three-year period.

In response, Feissner filed a motion to dismiss or, in the alternative, a motion for summary judgment. In the motion, Feissner argued that, as a matter of law, his conduct was not the proximate cause of any damages to Taylor. At the close of a hearing on March 23, 1994, the court (Ryan, J.) granted the motion, and stated that the issue of attorney's fees should be handled through arbitration.

Taylor, proceeding *pro se*, presents fifteen questions (including subparts) for our review, which we restate as follows:

I. Did the circuit court err in granting the motion for summary judgment when it concluded, as a matter of law, that appellee's conduct was not the proximate cause of appellant's damages?

II. Did the circuit court err when it concluded that it lacked jurisdiction to decide the fee dispute between appellant and appellee?

III. Did the circuit court err in failing to provide appellant an opportunity for rebuttal to a defense raised for the first time at the hearing?

For the reasons we shall set forth, we affirm in part and reverse in part the circuit court's ruling.

## FACTS

On November 4, 1988, Taylor retained Feissner to represent him with regard to a claim against the U.S. Department of Commerce for age discrimination. Prior to the alleged discrimination, Taylor was chief of the supply division at the

National Bureau of Standards. In 1978, the supply division was eliminated during a reorganization, and Taylor's position was abolished. Taylor was fifty-four years old at the time.

Following the reorganization, Taylor was assigned to a series of different positions within the agency, in which he claimed he was given no meaningful work. On three different occasions in 1981, Taylor was placed on a "reduction in force" list, but was removed from the list each time prior to any formal hearing. He was also required to change offices at least four times during a four-year period.

In August 1985, Taylor learned that the "supply" division was to be reinstated as the "supply and procurement" division, and a younger employee was named as the chief. In 1987, the acting director of the agency asked Taylor what his retirement plans were. Taylor was not eligible for retirement at that time.

Taylor was detailed to a temporary administrative position in December 1987. On April 29, 1988, a new acting deputy director also asked Taylor about his retirement plans. On June 7, Taylor was ordered to vacate his private office and was moved to a desk in a reception area.

Taylor first began to pursue his claim of age discrimination in June 1988. He contacted an Equal Employment Opportunity (EEO) counselor regarding his complaints on June 14. The following day, he initiated an administrative grievance procedure with the Department of Commerce. On July 13, 1988, Taylor filed a formal age discrimination complaint with the Equal Employment Opportunity Commission (EEOC). In his complaint, Taylor sought to be reinstated to his original permanent position as chief of the supply and procurement division. After the complaint was filed, the Director of the National Laboratory restored Taylor to his position of record ("Program Resources Analysis") and returned him to the private office that he was forced to vacate in June.

When Feissner entered the case on November 4, 1988, both the administrative grievance and the EEOC complaint were still pending. Each of those complaints charged the depart-

ment with a series of allegedly discriminatory acts occurring over a ten-year period. In December 1988, the Department of Commerce issued a final decision on the administrative grievance. The department concluded that relief for most of the alleged wrongdoing was time-barred by provisions in the applicable EEOC regulations, with the sole exception of the department's removal of Taylor from his private office in June 1988. Because Taylor had been returned to that office, the department concluded that the final issue was moot. In February 1989, the EEOC released a decision that concurred with the department's conclusions.

In his brief, Taylor asserts that Feissner "continuously counseled that appellant's claim of age discrimination was indeed valid, legitimate, and meritorious." According to Taylor, Feissner also told him that the administrative procedures must be exhausted before a complaint could be filed in federal court. Nonetheless, Feissner filed a complaint in the Federal District Court for the District of Maryland on January 24, 1989—one month prior to the EEOC's final ruling. The amended complaint contained two counts. Count I alleged a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.* Count II alleged a conspiracy to violate Taylor's civil rights in violation of 42 U.S.C. § 1985(3).

After a thorough briefing by both parties, the federal court dismissed Taylor's claim without a hearing. In a Memorandum and Order dated November 12, 1991, the court (Ramsey, J.) ruled, *inter alia*, that Taylor had failed to give the EEOC proper notice of his intent to file the district court action. The court also concluded that the EEOC was correct in ruling that relief for the alleged discrimination was either time-barred or moot. With regard to Count II, the court ruled that the § 1985 conspiracy claim was preempted by the ADEA. Taylor's *pro se* appeal to the Fourth Circuit Court of Appeals was still pending when this appeal was filed.

Taylor's claim for legal malpractice alleges, in part, that the lawsuit filed by Feissner was not timely and that Feissner did

not properly notify the EEOC of his intent to file the action. The complaint alleges that Feissner's malpractice resulted in $590,000 in damages, the bulk of which represents the alleged value of Taylor's claim for age discrimination. The damages also include $30,000 in fees paid to Feissner and expert witnesses, and $10,000 for costs incurred by Taylor in pursuing his *pro se* appeal to the Fourth Circuit.

In support of his motion to dismiss, Feissner avers:

A close examination of the requirements to file an age discrimination suit in District Court, along with the facts of this case, reveals, regardless of Feissner's alleged failure to timely notify the EEOC, Taylor would not have been able to recover any damages in his age discrimination suit.

In short, Feissner asserted that his handling of the case was not the proximate cause of Taylor's failure to recover damages for his age-discrimination claim. With regard to the dispute over Feissner's fees and the litigation expenses, Feissner noted that the retainer signed by the parties provides for settlement of such disputes "by arbitration or court action" at his option.

In granting Feissner's motion for summary judgment, the trial court stated:

I believe that at the time the suit was filed in the Federal Court the only action that could have been pled correctly or alleged was the removal of [Taylor's] office and title and that was resolved. I have considered the entire record, including [the federal district court's] memorandum and order, and I believe having said that and dismissing this action, the issue of attorney's fees can now be handled through the arbitration. So, I will grant the motion and dismiss this case.

From that ruling, Taylor filed this appeal.

### LEGAL ANALYSIS

#### I

As we noted above, the motion at issue in this case was styled as a "motion to dismiss, or in the alternative, motion for

summary judgment." Maryland Rule 2–322(c) provides in pertinent part:

> If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501....

Here, the court considered more than a dozen exhibits submitted by the parties before it ruled on the motion. The court plainly treated the motion as one for summary judgment, and we review the matter accordingly.

Maryland Rule 2–501(a) provides that a motion for summary judgment may not be granted unless the court concludes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In determining whether a factual dispute exists, all inferences that may be drawn from the pleadings, from affidavits, or from admissions must be resolved against the moving party. *Berkey v. Delia,* 287 Md. 302, 304–05, 413 A.2d 170 (1980). A disputed fact is not "material" unless resolution of such issue would somehow affect the outcome of the case. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Washington Homes, Inc. v. Interstate Land Dev. Co.,* 281 Md. 712, 717, 382 A.2d 555 (1978).

In *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 603 A.2d 1357 (1992), we explained that the trial court's handling of a motion for summary judgment should be akin to the standard applied to a motion for a directed verdict:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 244–45, 603 A.2d at 1361 (quoting *Anderson v. Liberty Lobby, Ltd.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91

L.Ed.2d 202 (1986)). When reviewing the trial court's grant of a motion for summary judgment, we must consider whether a dispute of material fact existed and whether the trial judge was legally correct. *Lynx, Inc. v. Ordnance Prods. Inc.*, 273 Md. 1, 8, 327 A.2d 502 (1974).

In *Watson v. Calvert Bldg and Loan Ass'n*, 91 Md. 25, 33, 45 A. 879 (1900), the Court of Appeals stated that an attorney will be liable to his or her client for losses resulting from the attorney's failure to exercise a "reasonable degree of skill" or a "like degree of diligence." *Accord Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 335, 624 A.2d 496 (1993). In a suit against an attorney for negligence, the plaintiff must prove that the attorney's neglect of a reasonable duty was the proximate cause of injury to the client. *Stone*, 330 Md. at 335, 624 A.2d at 499; *Flaherty v. Weinberg*, 303 Md. 116, 128, 492 A.2d 618 (1985). To establish that proximate cause existed, the plaintiff must show some reasonable connection between the defendant's alleged negligence and the injury suffered by the plaintiff. As the Court of Appeals explained in *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 156, 642 A.2d 219 (1994), proximate cause "ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission." The plaintiff must show, in part, that the alleged negligence was a "cause in fact," *Atlantic Mutual v. Kenney*, 323 Md. 116, 127–28, 591 A.2d 507 (1991), and that "but for" the negligence, the injury would not have occurred. *Peterson v. Underwood*, 258 Md. 9, 16, 264 A.2d 851 (1970). The existence or absence of proximate cause rests upon principles of common sense in light of the surrounding facts and circumstances. *See Texas Co. v. Pecora*, 208 Md. 281, 293, 118 A.2d 377 (1955).

In the context of this case, Taylor has the burden of proving that, "but for" Feissner's alleged negligence, Taylor would have prevailed on his age-discrimination claim. Feissner's motion for summary judgment cannot be upheld unless no fair-minded jury could return a verdict for Taylor on the evidence presented. *Seaboard Surety*, 91 Md.App. at 244, 603

A.2d at 1360–61. Our decision on that issue requires that we examine the mechanics of bringing a claim under the ADEA.

## II

■ The Age Discrimination in Employment Act provides two routes by which an aggrieved party may pursue a claim for age discrimination in federal district court. Under the "direct route," an ADEA plaintiff may proceed directly to federal court pursuant to 29 U.S.C. § 633a(c) (1988). The only prerequisite for such an action is timely notice to the EEOC as required by § 633a(d). Second, the ADEA provides that a person may pursue the claim administratively via the EEOC, and then bring an action in federal court if he or she is not satisfied with the outcome of the administrative process. 29 U.S.C. § 633a(b), (c) (1988). *See Stevens v. Department of Treasury*, 500 U.S. 1, 5–6, 111 S.Ct. 1562, 1566, 114 L.Ed.2d 1 (1991).

■ An aggrieved party who files a direct action in federal court must give the EEOC notice of his or her intent to do so "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d) (1988). The claimant is also required to give notice to the EEOC at least thirty days in advance of filing an action. *Id.* Under the administrative route, the time restrictions are substantially more severe. The aggrieved employee must bring

> ... to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action....

29 C.F.R. § 1613.214(a)(1)(i) (1994). In ruling on Taylor's claim, the federal district court concluded that the time limitations under both routes function like statutes of limitation, subject to equitable modification in proper cases. *See James*

v. *United States Postal Service*, 835 F.2d 1265, 1267 (8th Cir.1988).

The United States Supreme Court addressed a similar situation in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The applicable statute required that a claim of gender discrimination be filed with the EEOC within ninety days after the alleged unlawful conduct. The Court concluded:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.

*Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. The alleged discriminatory acts, the Court said, were "an unfortunate event in history which has no present legal consequences." Although *Evans* was decided under Title VII, the same principle has been applied to the time limitations contained in the ADEA. *See Bruno v. Western Elec. Co.*, 829 F.2d 957, 960 (10th Cir.1987).

In his complaint, Taylor alleged that Feissner negligently failed to give the EEOC thirty days' notice and that the lack of such notice was the proximate cause of Taylor's inability to recover damages for the alleged discrimination. In granting Feissner's motion for summary judgment, the trial court effectively concluded that no fair-minded juror could return a verdict for Taylor on the evidence presented. We affirm.

The federal court's ruling, together with the applicable statutes and regulations, make it plain that Taylor could have recovered damages *only* for discriminatory conduct that took place within the thirty-day or 180–day time limitations. If Feissner had given notice to the EEOC on November 4, 1988 (the date that Taylor first contacted him) and filed a direct action thirty days thereafter, Taylor's claim for damages would have been limited to his removal from a private

office in June 1988. The same may be said for an appeal from Taylor's administrative claim.[1]

When Taylor first contacted Feissner in 1988, ten years had passed since the department terminated Taylor's position, and three years had passed since the department failed to reinstate him as chief of the revived supply and procurement division. On Taylor's behalf, Feissner argued to the federal court that the time limitations should not apply to Taylor's claim for two reasons: first, because Taylor did not "discover" the discrimination until mid–1988; and second, because the removal of Taylor from his private office constituted part of a "continuing violation." The federal court rejected both theories.[2] With regard to the discovery rule, the court pointed to the direct language of the EEOC regulations, which states that an aggrieved employee must contact an EEO counselor within thirty calendar days of those events "causing him/her to believe" that discrimination had occurred. *See* 29 C.F.R. § 1613.214(a)(1)(i) (1994). The court then noted that Taylor, by his own admission, had "suspected discrimination all along," and only became *certain* in 1988. Further, the federal court concluded that Taylor was in no position to invoke the "continuing violation" theory, because the doctrine does not apply to a case in which the claimant is denied meaningful work following an allegedly discriminatory event. *See Bruno,* 829 F.2d at 960–62 (discussing the continuing violation theory generally); *Brewer v. Mosbacher,* Civil No. JFM–89–2340

---

1. Because Taylor first contacted an EEO counselor on June 14, 1988, relief under the administrative route would have been limited to discriminatory acts that occurred on or after May 15, 1988. Had Feissner given notice to the EEOC on November 4, 1988, relief under the direct route would be limited to acts which occurred on or after May 8, 1988.

2. Although the federal court ruled that an action by the direct route was barred by Taylor's failure to give proper notice, the court reached those issues via the administrative route. After noting that the ADEA contained no express exhaustion requirement, the court explained that the issue remained unsettled, and concluded that it lacked authority to impose an exhaustion requirement in Taylor's case. In *Stevens,* 500 U.S. at 7–11, 111 S.Ct. at 1567–68, the Supreme Court declined to decide the exhaustion issue because the government had "reconsidered" its position and no longer asserted that exhaustion was required.

(D.Md.1990) (holding that the continuing violation theory does not apply to an employee who alleges that he or she was denied meaningful work). *See also* 3A ARTHUR LARSON, EMPLOYMENT DISCRIMINATION § 102.21(b), at 21–251–53 (1994).

Assuming, *arguendo*, the truth of Taylor's allegations, it appears that Taylor may have had a meritorious claim for age discrimination. Nonetheless, Taylor was required to bring the matter to the prompt attention of the EEOC, and his own failure to do so was the proximate cause of his inability to collect damages for the alleged discrimination. Regardless of any facts that might be alleged and proven at trial, no reasonable jury could conclude that, "but for" Feissner's alleged negligence, Taylor would have recovered those damages. Feissner was entitled to judgment as a matter of law as to that issue relating to damages, and the circuit court did not err in granting his motion for summary judgment with respect thereto.

We think it necessary, however, to clarify the effect of the trial court's ruling. Taylor's complaint presented a single count of negligence and legal malpractice, by reason of which he allegedly suffered certain damages. With regard to the largest part of those damages—the alleged value of Taylor's age-discrimination claim—the trial court ruled that Feissner was entitled to judgment as a matter of law. With regard to the remainder of the damages—the fees paid to Feissner—the court dismissed the claim holding that there was a binding arbitration agreement. The court did not grant summary judgment with regard to Feissner's allegedly negligent performance of his professional and contractual duties to Taylor.

## III

At the close of the hearing on Feissner's motion to dismiss, the trial court concluded that "the issue of attorney's fees can now be handled through arbitration." Taylor contends that the trial court erred in dismissing his claim for fees and costs paid to Feissner. Resolution of the issue requires that we consider the nature of the damages claimed, as well as the

scope and effect of the arbitration clause contained in the retainer agreement signed by the parties.

In Taylor's complaint for legal malpractice, the alleged damages include approximately $30,000 in legal fees paid to Feissner over a three-year period. A January 1992 letter from Taylor to the Fee Arbitration Committee of the Montgomery County Bar Association provides further details. The letter states that Taylor paid Feissner $28,745.19 in costs and fees: $21,956.10 in attorney's fees, $6,035.50 for expert witnesses, and $753.59 in deposition costs. In part, Taylor's letter asserts that Feissner's filing of the federal court action was "nonproductive, inappropriate, unnecessary, and totally without merit." The letter concludes that Taylor's payment of attorney's fees and costs associated with the federal court action is "unconscionable, unfair, and excessive" in view of Feissner's mistakes and his "proven lack of expertise in employment law."

Although Feissner and the trial court have both characterized those concerns as a "fee dispute," we think it essential to point out that the claim is one for legal malpractice. The gravamen of such a claim is "the negligent breach of the contractual duty." *Flaherty v. Weinberg*, 303 Md. 116, 134, 492 A.2d 618 (1985). In *Kendall v. Rogers*, 181 Md. 606, 611, 31 A.2d 312 (1943), the Court of Appeals explained:

A client who has employed an attorney has a right to his diligence, his knowledge, and his skill; and whether he had not so much of these qualities as he was bound to have, or having them, neglected to employ them, the law properly makes him *liable for the loss which has accrued to his employer.*

(quoting *Cochrane v. Little*, 71 Md. 323, 18 A. 698 (1889) (emphasis added)).

The "fee dispute" contained in Taylor's complaint and his letter to the fee arbitration committee may be summarized as follows:

1. Feissner negligently counseled Taylor that his claim for age discrimination "was indeed valid, legitimate, and meritorious."

2. Relying on that negligent misrepresentation, Taylor authorized Feissner to pursue an action in federal court.

3. Feissner was further negligent in failing to give the EEOC proper notice of his intent to file an action in federal court.

4. As a consequence of Feissner's negligence, Taylor has been billed $30,000 in fees for a lawsuit that was "nonproductive, inappropriate, unnecessary, and totally without merit."

*Compare Flaherty,* 303 Md. at 134–35, 492 A.2d at 627–28 (discussing negligent misrepresentation in the context of attorney malpractice). A client may certainly consent to an action that has only a modest chance of success in court. Nonetheless, the attorney has both professional and contractual obligations to exercise reasonable care in advising his or her client about the merits of a claim. *See, e.g.,* MD.RULES OF PROFESSIONAL CONDUCT, Rule 1.4(b) (stating that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation").

The damages arising from this malpractice claim consist primarily of the fees and costs paid by Taylor.[3] Feissner contends that the claim is subject to the arbitration clause contained in the retainer signed by the parties, which states, in pertinent part:

Any claim or controversy *arising out of or relating to fees or costs due the Firm* shall be settled by arbitration or court

---

**3.** In his complaint, Taylor also sought $10,000 in damages for the "continuing costs" of pursuing a pro se appeal in the Fourth Circuit Court of Appeals, as well as the costs of pursuing three related civil actions in federal district court. On the record before us, it is unclear which (if any) of those expenses may constitute damages proximately caused by Feissner's alleged malpractice. We were advised at oral argument that Taylor's appeal to the Fourth Circuit Court of Appeals has been recently decided adversely to him.

action, at the option of the Firm, with the costs of said proceeding abiding the result. If an arbitration hearing is required, it shall be held at the Firm, and judgment upon any award rendered by the Arbitrator may be entered in any Court having jurisdiction.

(Emphasis added).

The cardinal rule in the construction and interpretation of contracts is that effect must be given to the intention of the parties, unless it is inconsistent with some established principle of law. *Kasten Constr. Co. v. Rod Enterprises*, 268 Md. 318, 328–29, 301 A.2d 12 (1973). The construction or interpretation of contracts is initially a matter of law for the court. *Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306, 596 A.2d 1069 (1991). Where a contract is plain and unambiguous, there is no room for construction and we must presume that the contract means what it says. In those circumstances, the court will not consider extrinsic evidence of the parties' intent. Rather, we confine our review to the language itself, and consider what a reasonable person in the position of the parties would have thought the contract meant. *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261–62, 492 A.2d 1306 (1985).

Taylor's complaint for legal malpractice alleged that he "paid" $30,000 in fees to Karl Feissner "and various experts he required in the preparation of the lawsuit." In his letter to the fee arbitration committee, Taylor asserted that the fees were "paid" to Feissner "over the period November 1988 through December 1991." In his motion to dismiss, Feissner neither admits nor denies that the fees have been paid. Had he done so, the trial court would have been required to consider all disputed issues of fact in the light most favorable to Taylor. *Berkey*, 287 Md. at 304–05, 413 A.2d at 171. Accordingly, the trial court erred when it dismissed Taylor's claim for recovery of any fees and costs that he alleged were previously paid. Rather than an adjudication of a "fee dispute," the trial court will be required to determine whether, under all of the circumstances, Feissner

exacted a fee in excess of that which would have been required by competent counsel to conclude that there was no merit to Taylor's claim. Such a determination must be based on evidence at trial or documentation (affidavits on a summary judgment motion) by legal experts concerning whether a lawyer experienced in discrimination law should have realized a low probability of successfully advancing the "continuing liability" theory or the theory that Taylor's cause of action accrued only in 1988 when he was alleged to have discovered the violation, and whether he therefore should have so advised his client of the low or minuscule probability of success. Should it be decided that Taylor was misled into believing there was a high probability of success when Feissner knew otherwise, Feissner would be entitled only to that reasonable fee required to determine that Taylor's cause was without merit.

## IV

The final question presented by Taylor hinges on certain remarks made by Feissner's attorney near the close of the hearing on Feissner's motion. According to counsel, the effect of *Stevens,* 500 U.S. at 1, 111 S.Ct. at 1562, was that "nothing could be done to salvage [Taylor's] claim, because no claim in fact existed as of November 4, 1988, as a matter of law, when my client was retained." Taylor contends that this was a new defense, previously unraised. He further contends that the trial court erred by "abruptly" ending the hearing, and by failing to give him an opportunity for rebuttal. It is clear from the pleadings and the transcript that Taylor's position has no merit. On page five of the memorandum supporting his motion to dismiss, Feissner sets out an argument that is not substantially different from his position during the hearing. Moreover, the transcript shows that Taylor did not request an opportunity to respond. The issue, therefore, was not preserved for appellate review. *See* MD. RULE 8–131(a).

## V

Feissner devotes the final section of his brief to his assertion that "appellant is not entitled to recover the fee charged by appellee." In doing so, Feissner seriously misstates the effect of *Stevens,* 500 U.S. at 1, 111 S.Ct. at 1562. Because Feissner's counsel made the same misstatements in his argument to the court below, we think it pertinent for us to comment briefly on the holding of *Stevens,* and the impact of that decision on Taylor's claim.

At the time that Feissner was retained, the federal circuit courts had reached different conclusions about the requirements for notification contained in 29 U.S.C. § 633a(d). In *Stevens,* 500 U.S. at 3–5, 111 S.Ct. at 1565, the district court had determined that an aggrieved employee was required to (a) initiate an action in federal court no later than 180 days after the alleged wrongful conduct, and (b) notify the EEOC *within* thirty days prior to the filing of the action. The Fifth Circuit Court of Appeals concluded that the district court erred, and held that *notice* must be given to the EEOC within 180 days after the alleged wrongful conduct. Nonetheless, the Fifth Circuit agreed that the federal litigation had to commence within thirty days after notice to the EEOC. Other federal courts had similarly misconstrued the statute. *See, e.g., Castro v. United States,* 775 F.2d 399, 403 (1st Cir.1985); *McKinney v. Dole,* 765 F.2d 1129, 1140 (D.C.Cir.1985). As we noted earlier, the Supreme Court concluded that (a) an aggrieved employee must notify the EEOC within 180 days after the alleged wrongful conduct, and (b) the notice must be given at least 30 days before the federal court action is filed. *Stevens,* 500 U.S. at 5–7, 111 S.Ct. at 1566.

During the hearing, Feissner's counsel argued that "the law in this area ... was in a state of flux," and the dispute between the various federal circuits was not resolved until *Stevens* was decided, well after Feissner had been retained. He later restated that position in greater detail. "[A]t the time that Mr. Taylor walked into [Feissner's] office," he asserted, "the law was very much unsettled as to whether or

not one needed to exhaust administrative remedies and the time for filing a lawsuit." Feissner's counsel concluded that "up until the time that Stevens is decided, there is no question that the advice he renders is correct." The same arguments are made in Feissner's brief.

With regard to the timing requirements, Feissner's argument is entirely without merit. The law was indeed unsettled, but we fail to see what bearing that uncertainty had on Taylor's claim. Regardless of whether Taylor was required to give notice within 180 days, or whether he was required to initiate a federal court action within 180 days, the result would have been the same, i.e., on the date that Taylor contacted Feissner, no relief could have been granted for the alleged discrimination, *unless* the federal court decided that the alleged discrimination was a "continuing violation." [4] Moreover, the ruling in Stevens does not redeem Feissner's

---

4. The successful application of the "continuing violation" theory to the facts of Taylor's case appears to be problematic. As Larson's treatise on employment discrimination explains:

   [T]he demotion or transfer of an employee, or the denial of a promotion, are discrete acts, rather than a continuing practice, and may not be the basis of a continuing violation claim, *even when the plaintiff asserts that each day he faces the effects of the discriminatory act.*

   3A Larson § 102.21(b), at 21–252–53 (citations omitted; emphasis added). Although we have quoted from the 1994 edition, the cases that Anderson cites in support of that proposition were decided *before* Taylor retained Feissner. *See, e.g., Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 304–05 (5th Cir.1981) (demotion was deemed to be a single act of discrimination, even though the demotion had a continuing effect on Downey); *Furr v. AT & T Technologies*, 824 F.2d 1537, 1543 (10th Cir.1987) (a continuing violation will not be found where the plaintiff merely complains about the "continuing effects" of past discrimination).

   The continuing violation may constitute either a company-wide policy of discrimination, or a clear pattern of related acts taken against a single individual. *Bruno*, 829 F.2d at 961. Feissner apparently argued that a continuing violation existed by virtue of the department's systematic discrimination against older employees. *Compare Furr*, 824 F.2d at 1542–43. In support of that argument, Feissner pointed to the facts of *Brewster v. Mosbacher*, Civil No. JFM–89–2340 (D.Md.1990), a case involving similar allegations against the department. The federal court concluded that Feissner's argument had no merit.

failure to give notice to the EEOC before filing the action. Although the federal circuit courts had disagreed about the timing of the notice, it was clear that *some* advance notice was required.

Before Taylor expended $30,000 on the federal lawsuit, Feissner was obliged to explain the merits of the case "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." MD.RULES OF PROFESSIONAL CONDUCT, Rule 1.4. He was also required to exercise reasonable care by filing any action in compliance with the applicable statutes, including the notice requirement contained in 29 U.S.C. § 633a(d). Taylor, of course, bears the burden of proving that Feissner failed to meet the proper standard of care.

Because Taylor is proceeding *pro se*, we close with a word of caution. As a general rule, expert testimony is required to establish legal malpractice, except in those cases where the "common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Fishow v. Simpson*, 55 Md.App. 312, 318–19, 462 A.2d 540 (1983); *Central Cab Co. v. Clarke*, 259 Md. 542, 551–52, 270 A.2d 662 (1970). We think that expert opinion will be necessary to establish whether Feissner exercised reasonable care in assessing the merits of the continuing violation theory as applied to Taylor's case. It may also be necessary to establish whether Feissner properly advised Taylor regarding the merits of his claim.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**